ELLEN G. FARDY *vs.* H. AUGUSTINE BUCKLEY & another.

Middlesex.    October 17, 1918. — November 27, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* To cancel note and mortgage, Fraud, For an accounting. *Fraud,* By failure to disclose material fact. *Agency,* Duty of fidelity. *Equity Pleading and Practice,* Alternative relief.

In a suit in equity by a woman against her sister and her sister's husband to set aside a note and a mortgage given by the plaintiff to the defendants, it appeared that the plaintiff was the forewoman of a laundry, who never had bought any real estate before and had no knowledge of business except that connected with the laundry, that the defendant brother-in-law was engaged in the real estate business, in which his wife helped him, that the defendant sister told the plaintiff that, if the plaintiff had money to invest, they had a new house which could be bought at a sacrifice, that, if the plaintiff put her money into the house, she would double it in three years provided "she left it in," that, induced by the advice of the defendants, the plaintiff bought the equity in the house, subject to two mortgages, and gave the defendants her note for $950 and a third mortgage on the house to secure it, that the defendants had bought the house recently for about $1,000 less than the price at which they sold it to the plaintiff and that they failed to disclose to the plaintiff the price they had paid, and she remained ignorant of it until after the whole transaction was completed, that the defendant brother-in-law, with the knowledge of his wife, acted as the plaintiff's confidential adviser in the purchase and management of the property and collected the rents for her. *Held,* that the failure of the defendants, who stood toward the plaintiff in a relation of trust and confidence, to disclose to the plaintiff the price that they recently had paid for the house entitled the plaintiff to relief, it having been the duty of the defendants to disclose to the plaintiff every material fact which affected the value of the property or which might induce or determine her action.

In the case above described a master found "that the defendants did not fraudu-

lently conceal any material fact from the plaintiff and did not make any false or fraudulent statements to her," and it was *held* that, in view of the other facts found, this finding was immaterial, as, where such fiduciary relations exist, the duty to disclose does not depend on the motives or intentions of the persons whose duty it is to make the disclosure.

In the same case it was *held* that it also was irrelevant that the property might have been worth at the date of the sale more than the plaintiff paid for it.

In the suit above described the bill contained a prayer for general relief, and it was *said*, that the plaintiff not only had the right of rescission, but, if she elected to keep the property, might have the defendants ordered to account to her for their secret profit, as the plaintiff was entitled to keep the property at the price which it had cost the defendants when they conveyed it to her.

BILL IN EQUITY, filed in the Superior Court on September 21 and amended on December 12, 1917, by the owner of the equity in a certain house and lot of land on Lambert Street in Medford, against her brother-in-law and her sister, his wife, praying that the defendants be ordered to surrender to the plaintiff a certain mortgage note signed by her and to execute and deliver to her a discharge of the mortgage on her house and lot securing the note, that an account be taken of what the defendants owed the plaintiff for rents collected out of the property, and for further relief. The amendment referred to above added to the bill the following allegations: "The defendants concealed from the plaintiff the fact that they had purchased said property a short time before for approximately eight hundred dollars and that they made a large profit, approximately eleven hundred and fifty dollars, by selling said property to the plaintiff, who relied wholly upon the advice of the defendants in purchasing it and did not know that the defendants were making any profit by selling it to her."

The case was referred to a master, who filed a report and, after a recommittal of the case to him, filed a second report, to which no exceptions were filed. The material findings contained in the reports of the master are stated in the opinion. The case was heard by *Wait*, J., who made an interlocutory decree ordering that the reports of the master be confirmed and that the bill be dismissed. Later, by order of the judge, a final decree was entered dismissing the bill with costs to the defendants. The plaintiff appealed.

*J. F. Daly*, for the plaintiff.

*F. L. Norton*, for the defendants.

PIERCE, J.   This is an appeal from a final decree dismissing the plaintiff's bill in equity seeking the cancellation of a promissory note given by the plaintiff to the defendants for $950 and of a mortgage to secure the payment thereof given on certain real estate.  The bill also contained a prayer for general relief.

The cause was referred to a master; his report was confirmed and no exceptions thereto are filed.  He has found that at the time of the transaction in question, the plaintiff and the defendant Catherine were sisters; that Catherine was the wife of the defendant H. Augustine Buckley; that the husband, the wife assisting him, was and had been for years engaged in the real estate business; that the husband and wife by deed dated June 23, 1914, became the owners of the equity in the premises which they conveyed to the plaintiff on October 31, 1914; that at the time of their purchase and between that date and their sale of the property to the plaintiff the defendants paid for it $5,491.42; that the defendant Catherine, at the end of the summer of 1914, had an interview with the plaintiff at the plaintiff's house while on a social visit; that at this interview Catherine told the plaintiff that if she had money to invest they had a new house which could be bought at a sacrifice; that if the plaintiff put her money in she would double it in three years provided "she left it in;" that a second interview took place at the house of the defendants and both defendants were present; that Catherine told the plaintiff that other parties were after the house, that it paid $64 or $65 per month, that it was a good investment; that she advised the plaintiff to take it; that the defendant husband told the plaintiff the price of the house was $6,500, that there were two mortgages then on the house — a first mortgage of $3,000, and a second mortgage of $1,550; that there was a talk that the plaintiff should invest $2,000 in cash; that the plaintiff finally said she would only put in $1,000; that Mrs. Buckley then told the plaintiff that there would have to be a third mortgage of $950; that it was understood nothing was to be done with the third mortgage until such time as the plaintiff was able to make payments on it; that it was to be laid one side; that she was not to be troubled about any payments on principal or interest until she was able to make them; that the parties came to an agreement on the above terms; that on October

31, 1914, at the request of Mr. Buckley, the plaintiff met him at the registry of deeds and was there delivered a deed of the premises signed by the defendants, which was "Subject to a mortgage of $3,000 . . . [and] also one of fifteen hundred and fifty ($1,550) dollars;" that Mr. Buckley produced at the registry the mortgage note of $950, and the mortgage to the defendants; that the plaintiff read them in a hasty and perfunctory manner and signed them; that the transaction made little impression on the mind of the plaintiff; that Buckley took the plaintiff into the record hall, showed her some of the record books, then took her to his house to dinner, and then drove her to a bank where she drew $1,000, which she immediately paid over to him.

The master further found that the plaintiff was then employed as a "forelady" in a laundry; that she had never bought any real estate before and had had no business experience outside of her position in the laundry; that she had not seen the interior of the house before she purchased it, nor did she see the interior until some months later; that Mr. Buckley told her that it might make some difference with the tenants if she went inside the house; that she placed entire confidence in her sister and brother-in-law, relied upon their judgment, and believed that they were looking out for her interest and would continue to do so; that the plaintiff did not know what the purchase price of the property was; that Mr. Buckley concealed, and Mrs. Buckley did not conceal, the amount of the purchase price; that neither defendant disclosed to the plaintiff the purchase price paid by them; that they did not fraudulently conceal any material fact from the plaintiff, and did not make any false or fraudulent statements to her.

The master found as a fact, the bill charged and the answer admitted, that "the defendant H. Augustine Buckley, who was the brother-in-law of the plaintiff, with the knowledge of the defendant Catherine B. Buckley, who is his wife and the plaintiff's sister, acted as the plaintiff's confidential adviser in the sale and management of said property and undertook and did collect the rents thereof for the plaintiff and take charge of and manage said property for her."

The sole question presented by the appeal is whether the non-disclosure by the defendants of the purchase price entitles the

plaintiff to relief in this bill. The relation of trust and confidence being established by the finding of the master and by the express admission of the defendants, the duty was upon the defendants to disclose every material fact which affected the value of the property which they sought to sell to the plaintiff, or which might to any substantial degree induce or determine her action. *Fox* v. *Mackreth,* 1 White & Tudor's Lead. Cas. in Eq. (4th Eng. ed.) 115, 171, note. *Tate* v. *Williamson,* L. R. 2 Ch. 55. *Emma Silver Mining Co.* v. *Grant,* 11 Ch. D. 918, 937. It is plain in such a suit as this the price which has been recently paid for property, especially that which has been paid for property which is offered for sale "at a sacrifice," is or may be a most cogent and persuasive material fact in the determination of the mind of the offeree to a course of action. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 188 Mass. 315, 327. The finding of the master "that the defendants did not fraudulently conceal any material fact from the plaintiff and did not make any false or fraudulent statements to her," in view of the other facts found, is an immaterial and irrelevant finding, as the duty to disclose, where fiduciary relations exist, rests upon reasons which are not concerned with motives and intentions or with the personal dishonesty or other moral obliquity of the person who comes within the equitable rules. Bower on Actionable Non-Disclosure, § 461, and cases cited. It is equally irrelevant that the property for which the plaintiff paid $6,500 may have been worth at the date of sale $7,000, or any other sum which will show a gain to the plaintiff. *Hamilton* v. *Wright,* 9 Cl. & Fin. 111, 123. *Parker* v. *McKenna,* L. R. 10 Ch. 96, 118.

Undoubtedly it was the right of the plaintiff at law to rescind the transaction or, retaining the property, seek damages for any fraudulent misrepresentation of fact. In the choice of remedies she also has the right to resort to equity for a rescission, or, if she shall elect to keep the property, to have the defendants account to her for their secret profit. In a word, the plaintiff is entitled to keep the property at the price which it had cost the defendants when it was conveyed to the plaintiff. *Tyrrell* v. *Bank of London,* 10 H. L. Cas. 26. *Hichens* v. *Congreve,* 4 Sim. 420, 428. *Gluckstein* v. *Barnes,* [1900] A. C. 240, 251. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 188 Mass. 315, 320. *Hawkes* v. *Lackey,* 207 Mass. 424, 432, 433.

It follows that the decree of the Superior Court must be reversed, with costs, and a decree conformable to this opinion entered for the plaintiff; and it is

*So ordered.*