JOSEPH A. POTHIER *vs.* MATTIE DOUCETTE & others.

Bristol.    October 27, 1930. — July 13, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Equity Pleading and Practice*, Notice to produce; Master: conduct of hearing, exceptions to report; Waiver of defence; Bill. *Equity Jurisdiction*, Adequate remedy at law, Accounting. *Insurance*, Fire: mortgagor's interest. *Contract*, Rescission. *Mortgage*, Of personal property: mortgagor's interest in insurance. *Bills and Notes*, Consideration. *Fraud*.

A master properly refused to require a party to a suit, upon notice, to produce books of a corporation of which he was an officer, where it appeared that such books were not in his custody and that he was not able to produce them.

It was within the discretion of a master hearing a suit in equity to refuse to continue the hearing for the purpose of requiring a party to produce a book, where the master found that there was "no wilful refusal . . . to produce" it and that "its production would not be helpful."

The owner of a business had three policies of fire insurance thereon, one of them payable to him and the other two payable to one holding a mortgage upon certain chattels used in the business. The two policies payable to the mortgagee were in an amount less than that required by the provisions of the mortgage. The mortgagee did not know of the policy payable only to the mortgagor. After a fire, the loss was adjusted by each company giving a draft for one third of the loss, two of the drafts being payable to the mortgagee and the other to the mortgagor. Thereafter the mortgage was foreclosed and the property bid in by the mortgagee. Subsequently the parties made an agreement whereby the mortgagee cancelled the mortgage note and gave a note

to the mortgagor and agreed to pay certain existing obligations of the business; and the mortgagor conveyed the good will and other assets of the business to the mortgagee and assigned the lease of the premises to him and agreed not to engage in a similar business within certain limits and to pay forthwith all the other outstanding obligations of the business, money "to be obtained from the Insurance Companies" to be applied to such obligations, and that, if the mortgagor was "called upon" to meet any obligations other than those assumed by him, they should be deducted from the principal sum of his note when due. The proceeds of the two policies payable to the mortgagee were used with his consent to replace property damaged by the fire. A part of the proceeds of the policy payable to the mortgagor also was used for that purpose. At a time when there were certain bills outstanding which the mortgagor was obligated to pay, although it did not appear that the mortgagee was damaged by his failure to pay them forthwith, the mortgagee brought a suit in equity against the mortgagor for an accounting as to the proceeds of the insurance policies and seeking to have the defendant enjoined from collecting the plaintiff's note on the ground that it was obtained by fraud. The plaintiff did not make a tender of the property conveyed and assigned to him. The defendant filed a cross bill on the note. A final decree was entered dismissing the bill and ordering the plaintiff to pay the defendant the amount of the note and interest. *Held,* that

(1) The plaintiff's right to an accounting must be determined on the basis that there was no rescission by him of the agreement with the defendant;

(2) The plaintiff was not entitled to relief as to the proceeds of the two insurance policies which were payable to him, since such proceeds were paid out for the replacement of property in accordance with the plaintiff's express agreement;

(3) The plaintiff had a contractual right to have the balance remaining of the proceeds of the policy payable to the defendant applied "forthwith" to the payment of outstanding bills for which the defendant was responsible under the agreement, and to have the remaining bills of that nature paid by the defendant;

(4) The final decree, in dismissing the bill, therefore was erroneous and must be reversed;

(5) No fraud, as a defence to the plaintiff's note, appeared from a failure by the defendant to disclose to the plaintiff the existence of the insurance policy payable to the defendant;

(6) Since it did not appear that the plaintiff had suffered damage from the failure of the defendant to discharge his obligations, there was nothing to be deducted from the note by reason of partial failure of consideration; and the defendant was entitled to the amount of the note and interest;

(7) A final decree should be entered ordering the defendant to apply the balance of the proceeds of his insurance policy upon such unpaid obligations and to pay the remaining obligations not satisfied thereby; and ordering the plaintiff, upon these obligations being satisfied, to pay to the defendant the amount of the note with interest.

BILL IN EQUITY, filed in the Superior Court on February 20, 1929, against Mattie Doucette, Walter Rikeman and Samuel J. Aronson, and described in the opinion.

The defendant Doucette filed a cross bill. The suit was referred to a master, material findings by whom are stated in the opinion. By order of *Gray*, J., there were entered an interlocutory decree confirming the master's report and the final decree described in the opinion. The plaintiff appealed from both decrees.

*H. A. Lider*, for the plaintiff, submitted a brief.

*W. C. Rosen*, for the defendants.

FIELD, J. The plaintiff brought a bill in equity for an accounting by the defendants for money obtained by them from certain insurance companies, and to order the balance thereof, if any, paid to him, and to enjoin the defendant Mattie Doucette from attempting to collect a certain promissory note, dated August 10, 1928, for $750, executed by the plaintiff and payable six months from its date to said defendant Doucette, until the further order of the court, and from "assigning, negotiating, or in any other way transferring" it. There was a prayer for general relief. The defendant Doucette brought a cross bill, praying that the plaintiff be ordered to pay to her the amount of such note with interest from its due date. The case was referred to a master. To his report objections — deemed to be exceptions under Equity Rule 26 (1926) — were filed by the plaintiff. The evidence is not reported. An interlocutory decree was entered overruling the plaintiff's exceptions and confirming the report, and a final decree dismissing the plaintiff's bill and ordering him to pay to the defendant Doucette the sum of $750, with interest from the due date of the note, and costs. The plaintiff appealed from both decrees.

The master found among others the following facts: In 1928 the defendant Doucette was the owner of a laundry business. The defendant Rikeman was her agent in the transactions involved in this case. March 22 the defendant Doucette gave to the plaintiff a chattel mortgage of the laundry machinery and other chattels for $3,500, one

of its conditions being that the mortgagor should keep the mortgaged property insured against fire for the benefit of the plaintiff for not less than $3,500. In May the mortgaged property was damaged or destroyed by fire. There were then three policies of insurance of $1,000 each on the property, all in the name of the mortgagor, two of them payable to the plaintiff as mortgagee, and the third payable to the mortgagor. The fire loss was adjusted by each insurance company giving a draft for $732.72 or $732.71. On the policy payable to the mortgagor the draft was payable to her. It came into the possession of the defendant Aronson, an insurance agent engaged by the mortgagor and the defendant Rikeman, and was paid to the mortgagor. By agreement of the parties the proceeds of the other drafts were to be used by the defendant Aronson to pay for replacing the machinery. July 14 the plaintiff notified him to pay no more bills, but with the implied consent of the plaintiff he thereafter paid bills for labor and materials for which he had contracted. July 26, the plaintiff foreclosed the mortgage and bid in the property for $250, subject to a first mortgage to the owner of the premises, leased to the defendant Doucette, on which the laundry business was conducted.

August 10, 1928, the plaintiff and the defendants Doucette and Rikeman entered into a contract, whereby the plaintiff agreed to pay certain outstanding accounts of the laundry business, to give the defendant Doucette a promissory note for $750, payable in six months without interest, and to "deliver up and cancel as paid" a note secured by the chattel mortgage, above referred to, and the defendant Doucette sold and conveyed to the plaintiff the good will and other assets of the laundry business, and agreed to assign to him the lease of the premises, and the defendants Doucette and Rikeman agreed not to engage in the laundry business in certain cities and towns or with any customers of the laundry for certain fixed periods and jointly and severally agreed to pay "forthwith" all obligations not assumed by the plaintiff theretofore incurred by the defendant Doucette in the operation of the laundry business, and to hold the plain-

tiff harmless from such obligations. There were further agreements that the plaintiff's note should contain a provision that if he "is called upon to meet any obligations," other than those assumed by him, they should be deducted from the principal sum of the note when due, and that "the monies to be obtained from the Insurance Companies to compensate for fire loss" should be used to pay such obligations, the plaintiff agreeing that he would "release all interest in the said funds when the said obligations have been paid." The plaintiff at the same time gave to the defendant Doucette a nonnegotiable promissory note for $750 on the terms fixed by the contract.

The master further found that in the negotiations leading up to the making of the contract the defendants "did not make any actual representations to the plaintiff that there was not another policy payable to Mrs. Doucette and did not make any misrepresentations in regard to it. They did not tell the plaintiff of it. In the talks of the amounts received from the insurance company the two drafts payable to the plaintiff were what was being discussed. The real inducement for the plaintiff to give the note and sign the agreement was to obtain the lease and the good will of the laundry business," that as to the insurance policy payable directly to the defendant Doucette, "there was no evidence of any intention on the part of the mortgagor to take out this insurance for the benefit of the mortgagee under the terms of the mortgage and the . . . [plaintiff] was not informed of it," and that the plaintiff "does not ask to have the agreement of August 10, 1928, rescinded but retains the benefits which he obtained by virtue of that agreement."

The master found that the defendant Aronson "paid out altogether by virtue of the agreement that . . . [he] should make replacements of machinery in the laundry . . . and by virtue of the agreement on August 10, 1928," $2,099.65, of which $1,465.44 was "from the proceeds of the two policies payable to the mortgagee," leaving a balance of $634.21 "which should be deducted from the amount of said third policy," if the plaintiff was entitled to an ac-

counting for such proceeds, and that there were now due bills, incurred by the defendant Doucette in the operation of the laundry, amounting to $253.88, for which the plaintiff is not responsible and which are not included in the amount of $2,099.65. The master found also that, if the defendant Doucette is entitled to recover on her cross bill, the amount to which she is entitled thereon is $750 with interest from February 10, 1929.

*First.* The interlocutory decree overruling the plaintiff's exceptions and confirming the master's report was proper. The exceptions are without merit. The first exception is "to the refusal of the master to require the . . . [defendant Aronson] to produce his books and records in accordance with the written notice duly made." The master's report shows that this defendant was given notice to produce books of account for a given period, containing his personal accounts and those of the corporation of which he was an officer, that the books of the corporation were not in his custody and he was not able to produce them, that the plaintiff complained of the witness's failure to produce a book of his own in the nature of a diary, and that the master found that there was "no wilful refusal . . . to produce" it and "its production would not be helpful," and "refused to continue the hearings at the request of the . . . [plaintiff] for the purpose of having the book produced," and the plaintiff excepted to the refusal. The defendant Aronson could not have been required to produce the books of the corporation. Nor, in the circumstances disclosed, was it an abuse of the master's discretion to refuse to continue the hearings for the purpose of having this defendant's own book produced. See *W. B. Manuf. Co.* v. *Rubenstein,* 236 Mass. 215, 220. The second exception is to a finding of fact which is consistent with other findings and cannot be reviewed in the absence of the evidence. By his third exception the plaintiff objected to the finding that the defendants "did not make any actual representations to the plaintiff that there was not another policy payable to Mrs. Doucette and did not make any misrepresentations in regard to it," on the ground that the

further finding that the defendants "did not tell the . . . [plaintiff] of it," showed that there was a misrepresentation in regard to the third insurance policy. . Properly interpreted the findings are not inconsistent and the finding objected to does not preclude the plaintiff from contending that the silence of the defendants was fraudulent. See *Fardy* v. *Buckley*, 231 Mass. 377, 381. The fourth exception is "to the finding of the master that the plaintiff is not entitled to any accounting." No such finding was made.

*Second.* The final decree was erroneous in dismissing the plaintiff's bill, but correct in ordering payment to the defendant Doucette of the principal and interest of the note given to her by the plaintiff.

If there was any question of the plaintiff's having an adequate remedy at law, it was waived by the defendants' going to trial on the merits (*Aronson* v. *Orlov*, 228 Mass. 1, 10, see *Edgett* v. *Palmer*, 225 Mass. 377, 379), and there is no suggestion that the cross bill is not pertinent to the case stated in the bill. See *Martin* v. *Murphy*, 216 Mass. 466.

Since the plaintiff does not. seek rescission of the contract of August 10, 1928, but "retains the benefits which he obtained" thereunder, his right to an accounting must be determined in accordance therewith. This is true, even if it is assumed in favor of the plaintiff — as we need not decide — that, by reason of the provision in the chattel mortgage that the defendant Doucette should insure for $3,500 and the other facts found, the plaintiff, prior to the contract of August 10, 1928, was entitled in equity to the proceeds of the third insurance policy as further security for the note secured by such mortgage (see *Stearns* v. *Quincy Mutual Fire Ins. Co.* 124 Mass. 61, 63; *Spillane* v. *Yarnalowicz*, 252 Mass. 168, 172; *Wheeler* v. *Ins. Co.* 101 U. S. 439; *American Ice Co.* v. *Eastern Trust & Banking Co.* 188 U. S. 626), and that the silence of this defendant as to this insurance policy was fraudulent. See *Atkins* v. *Atkins*, 195 Mass. 124, 132; *Newell* v. *Rosenberg*, 275 Mass. 455, 457–458, and cases cited.

The plaintiff is entitled to no relief as to the proceeds

of the two insurance policies which were payable to him, since, as the master found, these proceeds were paid out by the defendant Aronson for the replacement of machinery in accordance with the plaintiff's express agreement made prior to the contract of August 10, 1928, or "impliedly consented" to by him when that contract was made.

The provision in the contract of August 10, 1928, that "monies to be obtained . . . to compensate for fire loss . . : shall be used to pay present outstanding obligations" of the laundry must be construed as applicable to the proceeds of the third insurance policy. According to the master's finding $634.21 of these proceeds have been expended either for replacement of machinery or by virtue of this contract, so that the balance unexpended is $98.50. Though there is no more specific finding of the purposes for which these proceeds were paid out, there is no finding — and no contention by the plaintiff — that they were not paid out in accordance with the contract. As to the balance of $98.50, however, the plaintiff had a contractual right to have it applied "forthwith" to the payment of bills, aggregating $253.88 in amount, incurred by the defendant Doucette in the operation of the laundry, and remaining unpaid. Since, however, the plaintiff has not been called upon to meet these obligations and, indeed, is not responsible for them, and since it does not appear that he has suffered damage from the failure of the defendants Doucette and Rikeman to pay them "forthwith," as required by the contract, he has no right to have this balance, or any part of it, paid or credited to him, but is entitled to have it applied to the payment of the obligations in question. Moreover, though this balance is insufficient to pay these obligations in full, the plaintiff under the contract is entitled to have them fully satisfied by the defendants Doucette and Rikeman and the bill in its allegations and prayers is broad enough to warrant such relief in this suit.

The defendant Doucette is entitled to recover by her cross bill the principal of the note given to her by the plaintiff and interest thereon. This note was duly proved. The plaintiff, however, contends by way of defence (a)

that it was obtained by fraud, and (b) that this defendant has not discharged obligations resulting from the operation of the laundry business amounting to $253.88 in accordance with her promise in the contract of August 10, 1928. The note was given by the plaintiff in accordance with the provisions of that contract, and as a part of the same transaction, as part consideration for the sale and conveyance then made to him of the good will and other assets of the laundry business and the promises of the defendants Doucette and Rikeman not to engage in such business with limitations as to time and territory. Since the plaintiff does not seek to rescind the transaction, but, on the contrary, as the master found, "retains the benefits which he obtained by virtue" thereof, he must be taken to have affirmed it with all its incidents, including the note in question. It is, therefore, unnecessary to determine whether the facts warranted rescission by him. At most, the alleged fraud in failing to disclose the existence of the third insurance policy is effective as a defence to the note to the extent of the damage shown to have resulted to the plaintiff therefrom. See *Perley* v. *Balch,* 23 Pick. 283; *Daniel* v. *Learned,* 188 Mass. 294. No such damage is shown. It does not appear that the proceeds of the third insurance policy, if security for the note given by the defendant Doucette to the plaintiff, dated March 22, 1928, which the plaintiff by the contract of August 10, 1928, agreed to "deliver up and cancel as paid," gave any added value to that note. Furthermore, since it does not appear that the plaintiff has suffered damage from the failure of this defendant to discharge obligations resulting from the operation of the laundry business, amounting to $253.88, there is nothing to be deducted by reason of partial failure of consideration (see *Finance Corp. of New England, Inc.* v. *Maynard,* 249 Mass. 294, 297–298, and cases cited) from the amount otherwise recoverable on the note sued upon.

It follows that the interlocutory decree must be affirmed, but that the final decree must be reversed and a decree entered ordering the defendant Doucette to pay $98.50 on account of the obligations amounting to $253.88 incurred

Final

in the operation of the laundry business and unpaid, and the defendants Doucette and Rikeman jointly and severally to pay the balance due on these obligations, and ordering the plaintiff, upon these obligations being satisfied, to pay to the defendant Doucette the sum of $750 with interest thereon from February 10, 1929.

*Ordered accordingly.*