GEORGE DOHENY et al., as Administrators with the Will Annexed of LUCIUS GLEASON, Deceased, Appellants, *v.* HENRY LACY, Respondent.

1. EVIDENCE — UNDUE INFLUENCE — PRESUMPTION FROM CONFIDENTIAL BUSINESS RELATIONS. In an action between the representatives of a deceased president and controlling owner of a bank and the cashier thereof, who was also the nephew of decedent, in which the only issue tried was whether decedent was of sufficient mental capacity to make a certain contract, concerning the sale by him to his nephew of stock in the bank, at the time it was executed by him, proof of confidential business relations between them does not create the legal presumption that a fiduciary relation existed between them sufficient to give the nephew a controlling influence over his uncle, and thereby impose upon him the burden of proving that undue influence was not exerted or fraud used by him in procuring the contract.

2. ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS — ATTORNEY ACTING FOR TWO CLIENTS. Where an attorney acted as counsel for a decedent and another person in the preparation of an agreement respecting their mutual claims and in the execution thereof after its terms were assented to by both parties, and the contract was read and discussed in the presence of a third party who, with the attorney, witnessed its execution, and then by direction of decedent delivered the contract to the other party thereto, the attorney is not prohibited by section 835 of the Code of

Civil Procedure, in a subsequent litigation between the representatives of decedent and the other party to the contract, from disclosing either the communications made to him by decedent or the advice given by him to decedent in the transaction.

*Doheny* v. *Lacy*, 42 App. Div. 218, affirmed.

(Argued June 21, 1901; decided October 1, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 27, 1899, affirming a judgment in favor of defendant entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank Hiscock* for appellants. The court erred in its holding as to the burden of proof and failed to instruct the jury properly in reference thereto. (*Siemon* v. *Wilson*, 3 Edw. Ch. 36; *Tucker* v. *Dean*, 21 Wkly. Dig. 519; *Toms* v. *Greenwood*, 30 N. Y. S. R. 479; *Green* v. *Roworth*, 113 N. Y. 462; *Matter of Smith*, 95 N. Y. 517; *Fisher* v. *Bishop*, 108 N. Y. 25; *Barnard* v. *Gantz*, 140 N. Y. 249; *Marden* v. *Dorthy*, 12 App. Div. 176; *Adee* v. *Hallett*, 3 App. Div. 308; *Montesquien* v. *Sandys*, 18 Ves. 302.) The evidence of the witness Marshall as to the execution of the contract was incompetent and its admission was error. (*Matter of Coleman*, 111 N. Y. 220; *Alberti* v. *N. Y., L. E. & W. R. R. Co.*, 118 N. Y. 86; *McIntyre* v. *Costello*, 6 N. Y. Supp. 397; *Armstrong* v. *People*, 70 N. Y. 38; *Bacon* v. *Frisbie*, 80 N. Y. 394; *Root* v. *Wright*, 84 N. Y. 76; *Loveridge* v. *Hill*, 96 N. Y. 222; *Loder* v. *Whelpley*, 111 N. Y. 239; *Rousseau* v. *Bleau*, 60 Hun, 259.) The evidence of Marshall as to a long consultation between Gleason and himself as to the drawing of the contract and in which Gleason gave him instructions as to its provisions was incompetent. (*McIntyre* v. *Costello*, 6 N. Y. Supp. 397; *Armstrong* v. *People*, 70 N. Y. 38; *Bacon* v. *Frisbie*, 80 N. Y. 394; *Root* v. *Wright*, 84 N. Y. 76; *Loveridge* v. *Hill*, 96 N. Y. 222; *Matter of Coleman*, 111 N. Y. 222;

*Loder* v. *Whelpley*, 111 N. Y. 239.) The evidence of Marshall as to the execution of the will was incompetent. (Code Civ. Pro. § 835.) The court erred in the manner in which it permitted the examination of Elsner to be conducted. (*Coveney* v. *Tannahill*, 1 Hill, 33; *Bacon* v. *Frisbie*, 80 N. Y. 394.) Plaintiffs were entitled to show that the existence of the contract was not disclosed until the heirs had signed consents to the probate of the will whereby Lacy became executor. (*Newman* v. *Cordell*, 43 Barb. 448.) The court erred in excluding evidence offered by plaintiff to show that the value of the stock was double what Lacy paid for it. (*McKinney* v. *Pinkards*, 2 Leigh, 149; *Sturge* v. *Sturge*, 14 Jur. 159; *Groves* v. *Perkins*, 6 Sim. 576; *Rice* v. *Gordon*, 11 Beav. 265; *Evans* v. *Llewellyn*, 2 Bro. Ch. 125; *Osgood* v. *Franklin*, 2 Johns. Ch. 1.) The court erred in excluding evidence showing that Mr. Gleason after the beginning of his decline squandered his fortune and made foolish investments. (*Hall* v. *Hall*, 17 Pick. 373; *Davis* v. *Davis*, 86 Hun, 400; *Matter of Skaats*, 74 Hun, 465.) The trial judge erred in holding that, as a matter of law in the case, the contract had a legal consideration. (1 Jones on Liens, § 3; *McCaffrey* v. *Wooden*, 62 Barb. 316; *Hammond* v. *Barclay*, 2 East, 235; *Allen* v. *Spencer*, 1 Edm. Sel. Cas. 117; *McFarland* v. *Wheeler*, 26 Wend. 467; *Perry* v. *Bd. of Missions*, 102 N. Y. 105; *Wood* v. *Edwards*, 19 Johns. 205; *Livingston* v. *Rogers*, 1 Caines, 583; *Taylor* v. *Bates*, 5 Cow. 376; *Patchin* v. *Pierce*, 12 Wend. 61; *Ainsworth* v. *Backus*, 5 Hun, 414.)

*Edgar N. Wilson, Theodore E. Hancock* and *E. Raymond Cobb* for respondent. The question of fact involved in this case having been submitted to the jury, and their verdict in defendant's favor having been upheld by the unanimous decision of the Appellate Division, this court will assume that the verdict was sustained by the evidence. (*Harroun* v. *B. El. L. Co.*, 152 N. Y. 212; *Reed* v. *McCord*, 160 N. Y. 330; *Lewis* v. *L. I. R. R. Co.*, 162 N. Y. 52; *Lamkin* v. *Palmer*,

164 N. Y. 201.)  The court made no error in its holding as to the burden of proof and properly refused to charge as requested by plaintiff.  (*Doughty* v. *Hope*, 1 N. Y. 79 ; *Hickenbottom* v. *D., L. & W. R. R. Co.*, 122 N. Y. 100 ; *Crosby* v. *D. & H. C. Co.*, 141 N. Y. 589 ; *Sommer* v. *Oppenheim*, 19 Misc. Rep. 606 ; *Kay* v. *Met. St. Ry. Co.*, 163 N. Y. 447 ; *Lamb* v. *C. & A. R. R. & T. Co.*, 46 N. Y. 279 ; *Matter of Smith*, 95 N. Y. 523 ; *Jones* v. *Jones*, 137 N. Y. 610 ; *Post* v. *Mason*, 91 N. Y. 539 ; *Cowee* v. *Cornell*, 75 N. Y. 99.)  The testimony given by the witness Marshall was competent, and no error was committed in its admission upon the trial.  (*Rosseau* v. *Bleau*, 131 N. Y. 177 ; *Hebbard* v. *Haughian*, 70 N. Y. 54 ; *Foster* v. *Wilkinson*, 37 Hun, 244 ; *Sherman* v. *Scott*, 27 Hun, 334 ; *Smith* v. *Crego*, 54 Hun, 23 ; *Martin* v. *Platt*, 51 Hun, 437 ; *Sandiford* v. *Frost*, 9 App. Div. 57 ; *Matter of McCarthy*, 55 Hun, 11 ; *McKinney* v. *G. S., P. P. & F. R. R. Co.*, 104 N. Y. 352 ; *Morris* v. *N. Y., O. & W. Ry. Co.*, 148 N. Y. 88.)  The evidence given by Dr. Elsner was competent under section 834 of the Code of Civil Procedure.  (*People* v. *Koerner*, 154 N. Y. 366 ; *Edington* v. *A. L. Ins. Co.*, 77 N. Y. 569 ; *People* v. *Schuyler*, 106 N. Y. 304 ; *Fisher* v. *Fisher*, 129 N. Y. 654 ; *Matter of O'Neill*, 26 N. Y. S. R. 242 ; *Matter of Halsey*, 25 N. Y. S. R. 553.)  The contract in question had a legal and valid consideration.  (Bishop on Cont. § 81 ; *O. P. R. R. Co.* v. *Forrest*, 128 N. Y. 90 ; *Jackson* v. *Nicol*, 23 App. Div. 139 ; *Bunn* v. *Winthrop*, 1 Johns. Ch. 329 ; 3 Am. & Eng. Ency. of Law [1st ed.], 828.)

GRAY, J.  The plaintiffs have sued the respondent upon allegations in their complaint, which charge him with an accountability to the estate of their intestate for the value of certain shares of bank stock ; for moneys received by him in connection with the possession of the bank stock and for moneys loaned, or advanced, to him by the intestate.  The defendant, admitting the possession of the bank stock and the fact of an indebtedness having existed to the intestate, as a defense to the

plaintiffs' claims, set up a written contract, whereby mutual claims held by each against the other had been adjusted and the defendant's indebtedness had been resolved. This contract was made in 1892 and recited the sale and delivery by the intestate to the defendant of 1,697 shares of the capital stock of the Third National Bank of Syracuse, at times and at prices specified; that it was part of the agreement of their sale that the defendant should have such ample time to make payment as to make it practicable from the dividends to be declared; that, by reason of Gleason's policy in the management of the bank, payments of dividends had been deferred and the defendant, therefore, had been unable to make payment, and that Gleason, in appreciation of the defendant's services to him, was desirous of making the terms of payment liberal. It was then mutually agreed that defendant should give to Gleason his promissory note for $194,966.66, payable in ten years, without interest; that Gleason should have a lien, by way of collateral security, upon the shares of bank stock, and provision was made for preserving that lien in case of the stock being pledged for Gleason's benefit, and, finally, that defendant might anticipate the payment of the whole, or any part, of the principal of the note. This sufficiently exhibits the contract, which defendant sets up. It was, further, alleged in answer that the note called for by this contract was made and delivered by the defendant and that, subsequently, it was paid by him. Upon the coming on of the trial, and after the opening of plaintiffs' counsel, the amount was agreed upon between counsel, in open court, which would be due to the plaintiffs, if successful, as for moneys advanced by their intestate to defendant, to be used in the purchase of bank stock. The trial judge, then, stated as follows: "I understand the only issue now to be tried is whether or not a certain contract, which has been spoken of here, was a valid and binding agreement and that that depends entirely upon whether or not at the time it was executed Mr. Gleason was of sufficient mental capacity to make the agreement. In other words that the only issue here is as to Mr. Gleason's

mental capacity.". To which statement by the court, there was no dissent expressed by counsel. The trial proceeded and a great amount of testimony was taken, on both sides, with respect to Gleason's mental and bodily condition from the year 1884, when, as it is claimed by the plaintiffs, his mind had become impaired, to December, 1892, when he executed this contract and made his will.

It appears that the deceased was the uncle of the defendant. He was unmarried and had devoted himself, with success, to the management of the Third National Bank and, except for the period of one year, was its president from its organization, in 1869, until his death, which occurred in 1893, at the age of seventy-five years. The defendant had been employed by his uncle in the bank, in various clerical capacities, and had risen to the office of cashier; which he filled at the time of his uncle's death. In the latter part of 1892, Gleason was ill with the painful malady which terminated his life. He left a will, in which he simply constituted the defendant as his sole executor; but made no testamentary disposition of his estate. It may be mentioned that the defendant had been of service in aiding his uncle to secure a controlling interest in the stock of the bank and he appears, at all times, to have possessed his uncle's affection and his entire confidence in his business capacity and integrity.

At the close of the trial, the trial judge reviewed the evidence, in a charge to which no exception was taken, and instructed the jurors that the questions presented to them for determination " are whether that contract was made and executed by Mr. Gleason and whether, or not, at that time, he was of sufficient mental capacity to make and execute the same. If he was, and executed the contract, the plaintiffs cannot recover and your verdict must be for the defendant. If, on the other hand, you find that he did not have sufficient mental capacity to make and execute the contract, or that, in fact, he did not execute the same, the plaintiffs are entitled to recover in this action the sum which I have stated, to wit: $157,857.12." The jury returned a verdict for the defendant

and the judgment entered thereupon has been unanimously affirmed by the Appellate Division. This disposition below of the issue between the parties has conclusively settled every question of fact involved. As the result of the stipulation by counsel and of the statements by the trial judge, in his rulings and in his charge, the issue became one, simply, of the obligatory effect of the contract between the defendant and the plaintiffs' intestate. It had resolved the former's indebtedness into the form in which he had, eventually, discharged it as pleaded by him; provided the plaintiffs were unable to show that, for want of mental capacity in Gleason, it was not his contract and, therefore, was void and unavailable to the defendant. The pecuniary demands of the plaintiffs not being in dispute, with respect to their amount, there was but the one question of fact upon the determination of which the issue depended and that was whether the contract set up in defense had been competently entered into by the deceased. There is nothing for us to review, except such questions of law as are raised by exceptions to rulings upon the trial, in the admission or in the exclusion of evidence, or to rulings upon the plaintiffs' requests to instruct the jurors. Upon the more important of these, the opinion of Justice SPRING, at the Appellate Division, is well and ably expressed.

After the trial judge had charged the jury, plaintiffs' counsel asked him to further charge "that if the jury find that there were confidential business relations existing between Lucius Gleason and Henry Lacy, in respect to the affairs of Mr. Gleason, previous to Mr. Gleason's illness in December, 1892, and which were not disturbed or severed during that month, that the affirmative is upon Lacy to prove, and he must prove by a preponderance of evidence, that the contract of December 24th, 1892, was not procured by the undue influence of Lacy, or those in his interest, over Gleason, and was not induced by fraud, and was executed by Gleason, he understanding and appreciating its various conditions and covenants." The court refused to charge "in the language of the request" and the plaintiffs excepted. The language was, in truth,

involved and, possibly, the court might have been warranted, for that reason, in so ruling; but assuming that it was a direct request to charge that, if the jury found that " confidential business relations " existed between Gleason and Lacy, then the latter was under the burden of showing, affirmatively, that the contract in question was freely, fairly and competently entered into by the former, I think the request was for an improper instruction and should not have been granted.

That the contract was executed by Gleason is placed, of course, beyond dispute and as the principal issue was as to its having been his free and conscious act, it is manifest that its settlement depended upon the quality and quantity of the evidence adduced by the plaintiffs to destroy the force and obligation of the contract. Until the jury was satisfied that Gleason's mental incapacity was such as to avoid his agreement, it remained as a barrier to the plaintiffs' claims. The defendant was not required to prove, negatively, that it was not procured by undue influence, or in some fraudulent manner; but when there was any evidence tending to establish that view of the transaction, he would be called upon to meet it with evidence in answer, or in explanation. In other words, the burden of proving the invalidity of the contract could never shift from the plaintiffs, who asserted it; although their evidence might so approach the standard of proof as to necessitate evidence to controvert it, at the risk, otherwise, to the defendant of having the verdict go against him. The general rule is that the obligation of proof upon the main issue does not really shift from the party who asserts the affirmative; but remains upon him throughout the trial. When the obligation of submitting evidence in defense, or in rebuttal, shifts from either party, what really takes place is, rather, a shifting of the weight of evidence as the trial progresses. (See Greenl. Evid. sec. 74; Chase's Stephen's Dig. Evid. art. 95; *Lamb* v. *C. & A. R. R. & T. Co.,* 46 N. Y. at p. 279; *Farmers' L. & T. Co.* v. *Siefke,* 144 ib. 354.) The rule has been well formulated that, where no presumption appears upon the pleadings, the burden of proof lies on that party against whom the judgment would be ·

given, if no evidence at all were produced on either side, and it may be shifted from the party on whom it first rested by his proving facts which raise a presumption in his favor. (Stephen's Digest Law of Evidence, *supra*.)   In this case the burden was on the plaintiffs, and whether they proved any facts, which caused it to shift, was for the court to say.   Very correctly the trial court has held none such were proved.   Obviously, with this contract standing here in bar of the plaintiffs' demand, however the obligation of adducing evidence, whether real or believed, might be transferred from one to the other party during the trial, the burden of satisfying the jury that the instrument was invalid never shifted from the plaintiffs.

But they insist that the relations between the parties were shown to be of a confidential nature and that the legal presumption of an undue advantage having been taken by the defendant arises and, for that reason, the burden of proof shifted and lay upon the defendant.

No fraud was charged in the complaint.   It could not be presumed and the issue tried out was, only, as to the mental capacity of the deceased to make a contract.   The force, or point, of the proposition, advanced by the plaintiffs, is that the business relations, which subsisted between Gleason and Lacy, were fiduciary in their nature, that they did not deal upon terms of equality, and, as great advantage accrued to Lacy from his transaction, that the presumption of its fraudulent character was for him to disprove to the jury by a preponderance of evidence.   The difficulty with the success of this contention, in my opinion, seems to be of a twofold nature. In submitting to the jurors the issue as to the mental capacity of the deceased, the court instructed them to consider all the evidence, bearing upon that subject and exhibiting the circumstances which surrounded the dealings of the parties with each other.   Fraud, or undue influence, had not been alleged and the issue had been confined, without dissent, to the question of Gleason's mental capacity to agree with Lacy.   The jury decided that he had and the verdict would

seem to have settled the controversy. The evidence was, again, subjected to the review of the learned Appellate Division and there its consideration ended. But, to reason further, the plaintiffs' request assumes that the fact of the existence of "confidential business relations" would throw upon the defendant the burden of proving the fairness and validity of the contract. The defendant was cashier of his uncle's bank and they were intimately associated in business, as in social ways. He, undoubtedly, possessed his uncle's fullest confidence. Granting all that we may as to their confidential relations, they would not bring their dealings within the operation of the rule, which, upon equitable considerations, was adopted at common law and is invoked by the plaintiffs. That rule, within the cases, requires as a basis for its application that a fiduciary relation exist between the parties, which will give to the one, in legal presumption, a controlling influence over the other. Such would be the relation of parent and child, guardian and ward, trustee and *cestui que* trust, physician and patient and attorney and client. In these confidential relations, the situation of the parties is regarded as unequal and as conferring upon one a certain control, or domination, over the will, conduct, and interests of the other. Transactions between them are, therefore, scrutinized closely and presumptions arise of their impropriety, which must be met where an advantage is derived by the presumably dominant party. (*Sears* v. *Shafer*, 6 N. Y. 268; *Nesbit* v. *Lockman*, 34 ib. 167; *Cowee* v. *Cornell*, 75 ib. 91; *Matter of Smith*, 95 ib. 522.) The presumption is one born of a relation of parties, which would create a situation of more or less dependence by one upon the other. (*Smith* v. *Kay*, 7 H. L. Cas. 771.) While in the relations instanced this rule is generally applied, it is, also, extended to other relations of trust, confidence, or inequality; but its application will then demand some previous proof of the trust and confidence, or of the superiority on one side and of the weakness on the other. The law will not presume it from the ordinary relations between persons, in the business world, or in the family

connection.  The question as to parties so situated is a question of fact dependent upon the circumstances in each case. (*Cowee* v. *Cornell, supra,* pp. 91–101.)  Most of the business relations between persons, in a sense and to a degree, rest upon confidence reposed by the one in the other.  Without it, the commercial dealings of the community would be seriously restricted.  But the common-law presumption of impropriety, or of unfairness, was not intended to reach such cases ; or any cases except those where the circumstances have created what the law regards as a fiduciary relation and where, as a safer general assumption, it regards one as the stronger party and, therefore, as bound, in every transaction with the other, to establish, affirmatively, its good faith and propriety.  There was nothing in the relations sustained by the defendant to Gleason, which, of themselves, created any presumption of undue influence, or of undue advantage taken.  Whether as president and cashier of their bank, as employer and employé, as capitalist and business manager, or as uncle and nephew, their relations gave rise to no presumptions of inequality in their dealings.  Their association was extraordinarily intimate, it may be conceded ; but any question about their relations is one of fact and must be determined upon satisfactory extrinsic evidence.  I think that no error was committed by the trial judge in holding that the affirmative upon the issue remained with the plaintiffs.

The other question of importance, which the appellants have raised, is with reference to the admission of the evidence of Louis Marshall as to the preparation and execution of this contract between Gleason and defendant.  The claim is that he was the attorney of the former and, therefore, prohibited by the statute from disclosing either communications made to him by his client, or the advice given by him.  (Code Civ. Proc. sec. 835.)  The veil of strict secrecy is thrown over communications between attorney and client, when they are, presumably, of a confidential character ; but if the evidence discloses that the circumstances surrounding the transaction were such as not to warrant the presumption that the commu-

nications were in confidence, the Code provision is inapplicable. It is not in dispute that Marshall was acting at the time as counsel for both Gleason and Lacy in preparing the contract. It was drafted after conferring with both parties over its terms and then, by the direction of the deceased, it was delivered to Lacy. Marshall subscribed his name as a witness to its execution and a third party, Dr. Elsner, was present, heard the contract read and discussed, and, also, witnessed its execution. The rule of immunity as to communications between persons sustaining the relation of attorney and client was not intended, in my opinion, to operate where two or more persons are present, or are cognizant of the attorney's professional work. They are not then confidential. (See *Whiting* v. *Barney*, 30 N. Y. 330 ; *Hebbard* v. *Haughian*, 70 ib. 54, 62 ; *Hurlburt* v. *Hurlburt*, 128 ib. 420 ; *Rosseau* v. *Bleau*, 131 ib. 177 ; *People* v. *Buchanan*, 145 ib. 1, 31.) The reason of the rule is in the necessity of secrecy, in order that persons, needing professional advice, shall be encouraged to disclose freely, and without fear, the facts upon which that advice shall be given. Where it appears to the court from the facts that the attorney is acting for two clients, as here, and the communications are as to the preparation of an agreement with respect to their mutual claims and as to its execution after the terms are assented to, the rule ceases to have any reasonable application. It is in accord with our common understanding that what passes between the two persons, attorney and client, is in confidence and, in legal theory, protected from disclosure ; unless the privilege is competently waived. But if others shared in the communications, or in the transactions, had between them, we do not understand that they were confidential ; though we might understand that what occurred between an attorney and two clients, whose affairs he was adjusting, was privileged from disclosure to third persons. Admitting as to that, that there is a doubt, it is not this case; for third persons were present and were requested to witness the contract. In *Coveney* v. *Tannahill*, (1 Hill at p. 40), it was observed by Judge BRONSON, when considering the authority of *Robson* v.

*Kemp,* (5 Esp. 52), that it may have been thought there that "the witness had acted as attorney for both parties, for where an attorney is called in by one party to witness a transaction in the way of business with a third person, I cannot think his mouth is closed, either to what he saw, or heard. It is not in the nature of a confidential communication between an attorney and client." If this case could be regarded as one of an attorney acting for two clients, I should not consider that their communications would be privileged in a subsequent litigation arising between them, or their representatives. (See *Sherman* v. *Scott,* 27 Hun, 334; *Whiting* v. *Barney, supra; Root* v. *Wright,* 84 N. Y. at p. 76.)

No other questions are presented of sufficient importance to be considered by us and I advise the affirmance of the judgment, with costs.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and WERNER, JJ., concur.

Judgment affirmed.