EDWARD H. CRANWELL *vs.* WOODSON R. OGLESBY & another.

Berkshire.    September 21, 1937. — December 29, 1937.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Fiduciary.*

The existence merely of a close business friendship did not constitute a
fiduciary relationship between a financier and a real estate promoter
requiring the promoter, in transactions involving several mortgages
and deeds and a lease in which the financier knew that the promoter
and his wife had an interest, to disclose to the financier that a dis-
charge of a mortgage and the giving of a new mortgage to him left
free from the new mortgage property to which the wife had title and
which had been subject to the financier's former mortgage; and the
financier was not entitled merely because of such nondisclosure to
maintain a suit in equity to subject the wife's property to the new
mortgage.

BILL IN EQUITY, filed in the Superior Court on August 10,
1934.

From a final decree entered by order of *Burns*, J., the
plaintiff appealed.

*W. A. Heaphy*, for the plaintiff.

*John S. Stone*, for the defendant Kate Oglesby.

*F. de L. Cunningham*, for the defendant Woodson R.
Oglesby.

LUMMUS, J.    The plaintiff is a man of wealth living
in the city of New York. The defendants are husband and
wife, formerly of Yonkers, New York. The husband, here-
inafter called Oglesby, is a member of the bar of the State
of New York, but his principal business has been the develop-
ment for profit of real estate, including country clubs of the
usual social and sporting type. He and the plaintiff have
been close business friends since 1912, but they have had
little social intimacy.

One Cole, prior to 1928, had acquired several contiguous
estates in Lenox, containing in the aggregate 821.21 acres.
One of these estates, comprising 84.25 acres, was known as

Blantyre. Title to all the estates was in a corporation controlled by Cole, known as Lenox Investment Company, subject to a mortgage for $450,000, which was divided into a senior interest of $200,000 held for a corporation called Prudence-Bonds Corporation, and a junior interest of $250,000, held by another corporation controlled by Cole, known as Howard Cole and Company, Incorporated. In July, 1928, Oglesby acquired title to all the estates held by Lenox Investment Company, subject to the mortgage for $450,000, and soon afterward acquired the junior interest in that mortgage. In August, 1928, Oglesby conveyed to a corporation formed by him, called Wyndhurst Holding Corporation, the greater part of the estates acquired by him, but not Blantyre. Nothing was said in the deed about the mortgage for $450,000. A purchase money mortgage for $200,000 was given back to Oglesby. Oglesby formed a corporation called The Berkshires Hunt & Country Club, Inc., hereinafter called the club, which he financed to a considerable extent and tried for some years to put on its feet as a social and sporting club. The golf course used by the club, which had been constructed before Oglesby bought the estates, was located in part upon Blantyre.

Blantyre was conveyed by Oglesby to his wife in August, 1928, and in the deed he purported to covenant with her to relieve Blantyre from the burden of the mortgage for $450,-000. This conveyance was made as consideration for real estate in Yonkers owned by the wife which she had conveyed to Howard Cole & Company, Incorporated, as part of the consideration for the transfer to Oglesby of the junior interest in the $450,000 mortgage. At the time when Oglesby conveyed Blantyre to his wife he was not insolvent, and did not intend or expect to become so. But he did have in mind "securing a home and a refuge through Mrs. Oglesby's loyalty, if the future did bring to him financial storm and stress as actually happened."

The club was not a success. The holder of the $200,000 senior interest of the Prudence-Bonds Corporation (then reduced to about $175,000 including interest due) in the underlying $450,000 mortgage, began foreclosure proceed-

ings in August, 1930. Oglesby appealed to the plaintiff for help. The plaintiff said he would buy that senior interest, if Oglesby would prepare the necessary papers. An assignment of that senior interest was made to, and paid for by, the plaintiff, in November, 1930. Obviously the plaintiff then had Blantyre, as well as the other estates, as his security. But the plaintiff was not told and did not know just what the mortgage covered, and he made no investigation. If he had examined the papers given to him, including insurance policies, he would have seen that Mrs. Oglesby was said to be the owner of Blantyre, subject to the mortgage. But he made no examination.

The club needed further financing. It was proposed that the entire underlying mortgage of $450,000 and the second mortgage for $200,000 given to Oglesby be discharged; that the plaintiff accept for his senior interest and for further advances a new first mortgage from Wyndhurst Holding Corporation for $210,000; and that Oglesby accept for his junior interest and his second mortgage a new second mortgage for $360,000. Blantyre was not to be included, for it was not owned by the Wyndhurst Holding Corporation, the stock of which was held by the club. Instead, leases were to be made by Mrs. Oglesby to the Wyndhurst Holding Corporation, conveying the right to use certain parts of the golf course until December 1, 1933, and other parts as long as a golf course should be maintained.

This plan was carried out on December 13, 1930. The description in the mortgage from Wyndhurst Holding Corporation to the plaintiff did not include Blantyre. At the end of the description were these words: "Together with all the rights of the mortgagor in and to all the land described in a certain lease from Kate Oglesby to the mortgagor of even date herewith . . . being so much of the land now used for the eighth green, ninth tee and eighth and ninth fairways of the golf course of the Berkshires Hunt and Country Club as is owned by the said Kate Oglesby." The mortgages, leases, and other documents were drawn up by a lawyer in Pittsfield acting for the Wyndhurst Holding Corporation and the club, after con-

sultation with Oglesby. The plaintiff had no knowledge of the matter except through Oglesby. But the only representation made to the plaintiff by Oglesby in inducing him to accept the new mortgage for $210,000, beyond the use of the expression "increase your mortgage," was that the new mortgage covered the same property as the $200,000 second mortgage given to Oglesby, which the plaintiff held at the time by assignment, apparently as additional security. The plaintiff had only to compare that mortgage with his existing mortgage to learn that if the representation was true, as it was, his security was reduced. But Oglesby knew that the plaintiff, because of the friendly relations between them, would not be likely to make such a comparison unless Oglesby should suggest it to him. Shortly after the transaction, in the settlement of insurance premiums, the plaintiff became aware that his new mortgage for $210,000 did not cover Blantyre, and on December 24, 1930, the lawyer, at Oglesby's request, mailed to the plaintiff the new mortgage for $210,000 and also the discharged mortgage to Oglesby for $200,000 which followed the same description. Not later than December 25, 1930, the master finds, the plaintiff knew that his mortgage for $210,000 did not cover Blantyre.

From that time until the foreclosure of the plaintiff's $210,000 mortgage in the spring of 1933, the relations between Oglesby and the plaintiff remained friendly. The plaintiff during that period made no complaint of having been overreached or imposed on. He knew that Blantyre was not included in his mortgage, but the master finds that he did not know that part of the golf course was upon Blantyre, though if he had read his mortgage he would have learned the fact. The club went from bad to worse, and the plaintiff foreclosed his mortgage and became the purchaser at the foreclosure sale, receiving his deed on May 6, 1933.

Shortly afterwards the plaintiff discovered that part of the golf course was on Blantyre, and therefore not included in his property. In the summer of 1933 he proposed that Oglesby keep about 30 acres around the house for Mrs.

Oglesby and have the rest of Blantyre conveyed to the plaintiff so as to give the plaintiff title to the whole golf course. When Oglesby declined, the plaintiff became displeased, and their friendship was ended. But Mrs. Oglesby did give the plaintiff an extension of the lease of part of the golf course from December 1, 1933, to December 31, 1935. The master finds that she had no knowledge of any representations made by her husband to the plaintiff. The bill was filed August 10, 1934, to bring Blantyre within the plaintiff's security.

On the facts found the master found that the plaintiff was not barred by laches or estoppel. The judge sustained an exception to this finding, and "ruled" that "on the facts found and the inferences drawn by the Court, the 'beautiful friendship' alleged to have existed did not place on the defendant Woodson Oglesby the duty to disclose, or relieve the plaintiff of his duty to investigate; that plaintiff knowing in December 1930 that Blantyre was not included in his mortgage, and foreclosing in 1933, elected to take his security as it then was; that plaintiff is not entitled to the relief prayed for and that he has been guilty of laches." The master's report was confirmed, subject to the foregoing, and the bill was dismissed with costs to the defendant Kate Oglesby. The plaintiff appealed.

We think that the judge was right in finding that there was no confidential relation between the plaintiff and Oglesby that placed on the latter the duty to disclose, or relieved the plaintiff of his duty to investigate, the facts as to what property was included in the $210,000 mortgage. There was no recognized fiduciary relationship, such as attorney and client, physician and patient, promoter or director and corporation. Oglesby was known to have a personal interest in the transactions and to be furthering as well the interest of the club. The plaintiff did not rely upon him as an agent or adviser whose allegiance was undivided. The plaintiff was a business man of long and large experience. Of course there may be a fiduciary relationship that does not fall within any of the familiar forms. *Hawkes* v. *Lackey*, 207 Mass. 424. *Fardy* v. *Buckley*, 231

Mass. 377. *Ball* v. *Hopkins*, 268 Mass. 260, 267. *Cann* v. *Barry*, 293 Mass. 313. But in *Comstock* v. *Livingston*, 210 Mass. 581, 584, this court said, "Mere respect for the judgment of another or trust in his character is not enough to constitute such a relation. There must be such circumstances as indicate a just foundation for a belief that in giving advice or presenting arguments one is acting not in his own behalf, but in the interests of the other party. If the relation is a business one, the existence of the mutual respect and confidence does not make it fiduciary."

For this reason the final decree dismissing the bill was right. If there was error in sustaining the defendants' exception to the master's report, relating to laches and estoppel, it has become immaterial in view of this decision. The appeal by Kate Oglesby from the interlocutory decree overruling all but one of her exceptions to the master's report, also has become immaterial.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*