E. Donald STEINBRUGGE, Appellant,

v.

John S. HADDOCK and Alma J. Haddock, as Executrix of the Estate of Marshall Haddock, Jr., deceased, Appellees.

No. 6279.

United States Court of Appeals
Tenth Circuit.

July 26, 1960.

872

Garrett Logan and Richard L. Hull, Tulsa, Okl. (Villard Martin and Jack H. Santee, Tulsa, Okl., on the brief), for appellant.

G. C. Spillers, Jr., Tulsa, Okl. (G. C. Spillers and Jack R. Givens, Tulsa, Okl., on the brief), for appellees.

Before MURRAH, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

Appellant Steinbrugge brought this diversity suit to rescind six purchases of Oklahoma oil and gas interests from appellees, the Haddocks, on the grounds that the Haddocks' agent in the transactions, Kunsman, had breached fiducial duties owed by him to Steinbrugge. More particularly, appellant contends that in each of the six transactions, Kunsman was acting as his agent or at least in some fiducial capacity, giving rise to strict duties to disclose to him all material facts, e. g., that Kunsman was also the Haddocks' agent, and the amount of Kunsman's commissions on the sales. The trial court found, upon a non-jury trial, that there was no fiducial relationship between Steinbrugge and Kunsman, and that even assuming there was, Kunsman had fully and properly discharged all duties thereunder. Appellant claims, as he must in order to prevail here, that the trial court erred in both respects.

We know that the existence of an agency or a fiducial relationship is a question of fact which must be proved by the one asserting it. See Appleman v. Kansas-Nebraska Natural Gas Co., 10 Cir., 217 F.2d 843, and cases cited therein; Appleby v. Kewanee Oil Co., 10 Cir., 1960, 279 F.2d 334; Mahan v. Dunkleman, 1951, 205 Okl. 54, 234 P.2d 366. And the ruling of the trial court thereon is of course conclusive unless upon a consideration of the whole record we must say it is clearly erroneous. Rule 52(a) F.R.Civ.P., 28 U.S.C.A.

The following facts found by the trial court are supported by record evidence. Steinbrugge is a New Jersey attorney heretofore unfamiliar with the oil and gas business. In the fall of 1957, he consulted Kunsman, a Tulsa petroleum geologist, concerning the wisdom of a prospective oil and gas investment. Kunsman advised him against it and he followed this advice. Steinbrugge had al-

ready made one investment, the "Dale Lease", and employed Kunsman to make a detailed investigation of that property, with compensation on a per diem basis. During their conversations that day, according to Kunsman's testimony (which the trial court believed), Steinbrugge asked him " * * * if something would come to my attention whether or not I would recommend it to him or call it to his attention, and I agreed to do so. And he said, certainly there are some deals here in Oklahoma that would be worthy of investment and I mentioned that I did know of one such place at that time and mentioned just one—the Carter-Knox field." A general discussion of the Carter-Knox field ensued, and Kunsman also told him about a friend, John Haddock, who had an interest in this field that he was willing to sell in order to raise expense money for a dry hole. That night, after returning from Oklahoma to New Jersey, Steinbrugge phoned Kunsman and made further inquires about Haddock's interest. Kunsman told him " * * * that the $2,000.00 [per acre], which was the offering price, included a commission to me, and that the price therefore would be net to the buyer." Steinbrugge indicated he would buy the property, and stated that if anything else came to Kunsman's attention, he would like Kunsman to present it to him.

This was the first of the complained-of transactions. All the rest also took place in the fall of 1957, and followed a similar pattern. Kunsman brought each to Steinbrugge's attention by a long distance telephone conversation, describing the property geologically, stating the price at which it was offered and that the price was "net" to Steinbrugge, recommending it as a good buy, and saying "I am giving you the opportunity of either refusing this deal or buying." No specific mention was made in any of these five transactions of Kunsman's agency for the Haddocks or of any commission to be received from them. Steinbrugge closed each transaction by sending Kunsman a check payable to John Haddock.

All but the last transaction occurred during the time Kunsman was in Steinbrugge's employ in connection with the Dale lease. At no time was there any talk of Steinbrugge compensating Kunsman for his part in the purchase transactions, and Steinbrugge never made any specific payment therefor. Prior to the last transaction, Kunsman wrote a letter to Steinbrugge including general information concerning the purchases to date, and further stating: "From time to time, due to slowness of development, some of the larger royalty owners may get impatient to get their hands on substantial amounts of money for new homes and other reasons. * * * Since John [Haddock] has done considerable buying in the area, he will probably be one of the first to be contacted on such sales. If you would like to be included on such future purchases, either of us would be glad to call such purchases to your attention and, at least, give you the courtesy of a refusal." Claiming to have learned for the first time about a year later that Kunsman had been the Haddocks' agent in these transactions, Steinbrugge, after demand, brought this suit for recission of the purchases.

■■ In the first place, an agency relationship does not exist unless the conduct of the parties manifests that " * * * one of them is willing for the other to act for him subject to his control, and that the other consents so to act." Farmers Nat. Grain Corp. v. Young, 187 Okl. 298, 102 P.2d 180, Syl. 1; and see also Appleby v. Kewanee Oil Co., supra; Restatement, Agency 2d § 1. The evidence of record is certainly susceptible of the construction given it by the trial court, to the effect that the relationship of the parties, whatever it may be, lacked the requisite right of control to constitute agency.

Appellant's more cogent contention, as the trial court recognized, was that because of the trust, confidence, and reliance which Steinbrugge placed in Kunsman professionally, the role of a fiduciary was nonetheless imposed on Kunsman in

his dealings with Steinbrugge. And if, as appellant suggests, the mere reliance upon the superior knowledge and judgment of another, who knows of this reliance, raises a fiducial relationship enforceable in equity, the appellant's position is wholly tenable and factually sustained. For as the trial court said, Steinbrugge did undoubtedly rely on the superior professional knowledge of Kunsman, and Kunsman doubtless knew it.

■■ Fiducial relationships are born in a boundless variety of circumstances, in which confidence is reposed on one side, resulting in dominion or influence on the other. They frequently arise out of trust and confidence consensually placed in the superior knowledge, skill, or judgment of another. And the correlative rights and duties vary and are conditioned upon the particular circumstances that create them. See Hivick v. Urschel, 1935, 171 Okl. 17, 40 P.2d 1077, 1080; Renshaw v. Tracy Loan & Trust Co., 87 Utah 364, 49 P.2d 403, 100 A.L.R. 872; Lewis v. Schafer, 1933, 163 Okl. 94, 20 P.2d 1048, 1050; Derdyn v. Low, 1923, 94 Okl. 41, 220 P. 945, 948; Appleman v. Kansas-Nebraska Natural Gas Co., supra. But we do not think the courts have ever gone so far as to allow one person to rely with impunity upon the superior business judgment of another, merely because he so chooses, and thus raise an enforceable fiducial relationship. He cannot blindly follow the counsel of the other party simply because it is superior. He owes himself the duty to exercise his own faculties, knowledge, and experience in related business affairs. See Vargas v. Esquire, Inc., 7 Cir., 1948, 166 F.2d 651; Cranwell v. Oglesby, 1937, 299 Mass. 148, 12 N.E.2d 81, 83; Doheny v. Lacy, 1901, 168 N.Y. 213, 61 N.E. 255, 258; Hancock v. Anderson, 1933, 160 Va. 225, 168 S.E. 458, 463–464; cf. Restatement, Torts § 541, Comment a.

■■ True, the trial court was of the view that Kunsman did possess superior knowledge of the properties purchased, and that Steinbrugge relied upon his recommendations to the effect that

the properties were good investments at the prices quoted. But in his characterization of the relationship of the parties and the correlative rights and duties flowing therefrom, the court thought it significant that Steinbrugge was a lawyer of unusual intellect, with diversified experience, who could not close his eyes to pertinent facts within his knowledge. In that regard, the trial court noted that Steinbrugge knew of the intimate relationship between Kunsman and the Haddocks; that Kunsman was acting as agent of the Haddocks in the sale of the properties, and that Kunsman's commissions on the transactions were provided, not by him, but by an arrangement between Kunsman and the Haddocks. The trial court specifically found that no agreement existed between Kunsman and Steinbrugge to the effect that Kunsman would act as Steinbrugge's confidential advisor in connection with the transactions complained of, and that Kunsman did not so consider himself. These findings, supported by the evidence, led the trial court to deny the claimed fiducial relationship between Steinbrugge and Kunsman, and to place upon Steinbrugge the heavy burden of proving fraud, which he clearly did not sustain.

■ But assuming the possibility of a fiducial relationship with the resulting burden on appellees of proving Kunsman's "utmost good faith," the court was of the view, and specifically found, that "Kunsman made a full, fair and complete disclosure to the plaintiff of all the material facts within his knowledge relating to the transactions complained of." The court specifically absolved Kunsman of any knowledge of the profits the Haddocks were making on the sales; and was satisfied that Steinbrugge knew Kunsman was receiving a commission, and reasoned that if Steinbrugge was interested in knowing the amount, he was under the duty to make some inquiry, which he failed to do. These findings are supported by the evidence and permissible inferences.

We are inclined to agree with the trial court that the circumstances surrounding

the transaction did not raise a fiducial relationship. But whether we accept the trial court's categorization of the legal relationship between the parties and deny its fiducial character, or whether we choose to bring it within the sweep of the law's concept of that term and attribute commensurate duties thereto, we also agree with the trial court that Kunsman fulfilled the duties owing and arising out of any such relations.

The judgment is affirmed.