**UNITED INSURANCE COMPANY OF AMERICA**

v.

**B. W. RUDY, INC., Bertram W. Rudy (a/k/a B. W. Rudy), Chestnut Avenue Apartments, Inc., and Harry L. Haeberle.**

Civ. A. No. 42260.

United States District Court
E. D. Pennsylvania.

July 17, 1967.

Bernard J. Smolens, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

David H. Kubert, Philadelphia, Pa., for defendants, Bertram W. Rudy (A/K/A B. W. Rudy), Chestnut Avenue Apartments, Inc.

Thomas J. Mullaney, Andrew F. Mimnaugh, Philadelphia, Pa., for defendant, Harry L. Haeberle.

## OPINION AND ORDER

CLARY, Chief Judge.

On March 10, 1967 United Insurance Company of America (United) filed a complaint, grounded on diversity of citizenship and alleging a scheme to defraud, against B. W. Rudy, Inc. (Rudy Corporation), Bertram W. Rudy (Rudy), Chestnut Avenue Apartments, Inc., (Chestnut), and Harry L. Haeberle (Haeberle). Answers were not filed; instead, on April 7, 1967 defendants, Rudy Corporation, Rudy, and Chestnut filed a Motion for More Particular Statement of Claim and a Motion to Dismiss. Thereafter, on April 28, 1967 defendant, Haeberle, filed a Motion to Dismiss. The motions, both of Rudy Corporation, Rudy and Chestnut, and of Haeberle, attack the sufficiency of United's complaint; however, they base their attack on different grounds and will, therefore, be considered separately.

Since the factual allegations in United's complaint are the basis for the motions, relevant paragraphs from the United complaint will be substituted for an independent recitation of the facts.

"4. On or about July 9, 1963, defendant Chestnut applied in writing to plaintiff for a mortgage loan in the principal amount of $710,000 to be secured by a note to be signed by defendants Chestnut and Rudy Corporation and a mortgage upon certain land and improvements, including an apartment building not then completed but to be built by defendant Rudy Corporation and presently known as Vineyard Manor Apartments, 1123 Chestnut Street, Vineland, Cumberland County, New Jersey."

"5. Defendant Haeberle is a Professional Engineer and Real Estate Appraiser and holds himself out as an expert in his fields, competent to make thorough inspections of real estate and appraisals and reports thereon."

"6. In order to induce plaintiff to make the aforesaid loan to Chestnut, defendants Chestnut, Rudy and Rudy Corporation caused to be delivered to plaintiff certain plans and specifications and represented to plaintiff that the aforesaid apartment building was to be built by Rudy Corporation in accordance therewith, and they also delivered to plaintiff an Appraisal Report dated July 8, 1963 made by defendant Haeberle which stated, *inter alia,* that the aforesaid lands and buildings, upon satisfactory completion in accordance with the plans and specifications had a fair market value of $1,-175,000."

"7. On or about August 6, 1963, pursuant to the aforesaid application and in reliance upon the representations made therein and in further reliance upon the representations made by all of the defendants herein, plaintiff issued its conditional commitment to make a mortgage loan to the defendant Chestnut in the principal amount of $710,000."

"8. Thereafter, and prior to November 4, 1964, defendant Haeberle, on behalf and at the request of the other defendants herein, and in order to induce plaintiff to make the aforesaid loan, issued a Supplemental Appraisal Report in which he certified that he had inspected the apartment project, that the apartment project had been completed in accordance with the aforesaid plans and specifications and that the fair market value of the property was no less than $1,175,000."

"9. In order to induce plaintiff to make the aforesaid loan to Chestnut, defendants caused to be delivered to plaintiff the aforesaid Supplemental Appraisal Report."

"10. In reliance upon the various representations and warranties made to plaintiff by the defendants, including but without being limited to, the statements made in the loan application, the Appraisal Report, the Supplemental Appraisal Report and the plans and specifications, and taking into account the special qualifications claimed by defendant Haeberle, plaintiff, on November 6, 1964, made the mortgage loan of $710,000 to or for the account of defendant Chestnut."

"11. Pursuant to agreement between plaintiff and defendant Chestnut, made with the knowledge, concurrence and intention of the other defendants, plaintiff received as security for the aforesaid loan a first mortgage from defendant Chestnut upon the premises referred to above and also an assignment of rents attributable to the leasing of the various portions of said premises."

"12. Subsequent to the making of the loan as aforesaid, plaintiff learned that the apartment project had not been completed in accordance with the plans and specifications, but to the contrary, had deviated therefrom in many substantial respects. The deviations referred to included, but are not limited to, the following: Failure to construct one of the three apartment buildings to the prescribed size; improper construction of roof and roofing sub-structures and frame-

work; failure to install, in some instances, air conditioners, and, in others, to make structural provision for air conditioners; failure to install or improper installation of flashing and coping; failure to install or improper installation of caulking and weather-stripping; improper installation of doors, windows and sills; improper cement and concrete work; installation of improper heating plant."

"13. Although all of the aforesaid deviations were or should have been known to the defendants, defendants, as part of a scheme in which they all participated for the purpose of inducing plaintiff to make the aforesaid loan, failed to reveal them to plaintiff."

"14. As a result of the failure of defendants to complete the apartment project in accordance with the plans and specifications and as a result further of defendants' misrepresentations as aforesaid, plaintiff, in order to protect and preserve its security interest has been and will be required to expend in excess of $150,000 to correct the deviations and to put the apartment project in the condition in which it would have been had it been completed as represented by defendants. As a further result of defendants' improper conduct as aforesaid, the value of plaintiff's security has been diminished to an extent not yet fully determinable."

I. THE MOTION FOR MORE PARTICULAR STATEMENT OF CLAIM AND THE MOTION TO DISMISS OF RUDY CORPORATION, RUDY AND CHESTNUT

The defendants, Rudy Corporation, Rudy and Chestnut (Rudy Group) challenge United's complaint under Federal Rules of Civil Procedure 8 and 9, arguing that it does not set forth in a simple and clear fashion the nature of the claim. They seek to have it either dismissed or particularized. However, this Court, applying the principles of modern federal pleading, finds the Rudy Group motions to be without merit.

In their briefs, the Rudy Group points to certain alleged vague areas in the United complaint and argues that they are crucial. The alleged vague areas are as follows:

(1) There are no separate counts for the separate defendants.

(2) Paragraph 4 does not allege that Rudy Corporation, Rudy or Haeberle, applied in writing for the loan.

(3) Paragraph 6 does not allege dates or the means of delivery in regard to the plans and appraisal report.

(4) Paragraph 7 does not have documents attached as exhibits to show which defendants made representations.

(5) Paragraphs 8, 9 and 10 use the word "defendants" without specificity.

(6) Paragraphs 12, 13 and 14 do not individuate the specific deviations.

(7) Paragraph 13 hints at fraud but is not specific enough under Rule 9(b).

(8) The whole complaint is vague and does not allege privity, agency, or specific items of damages.

Moreover, the Rudy Group uses this alleged vagueness to support both of their motions.

■ At the outset, the Rudy Group Motion to Dismiss may be denied. The remedy for a vague complaint is not a motion to dismiss. Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959). Vagueness should be remedied, if necessary, by a motion for a more particular statement of claim. The Rudy Group has filed such a motion; however, it, too, may be disposed of briefly.

■■ Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) has been specific in defining the basis by

which an alleged vague complaint is to be tested. It holds as follows:

> " * * * the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."

Thus, aside from the assertion that paragraph 13 violates Rule 9(b), it is sufficient to generally hold, without a specific discussion of each averred vague area, that the information desired by the Rudy Group can and should be obtained by discovery. The Rudy Group motion asks to have definite evidentiary facts set out in detail, which is way beyond the "fair notice" called for in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957). Indeed, a motion for more particular statement of claim contemplates a major ambiguity or omission in a complaint which renders it unanswerable, and it is not for the purpose of preparing for trial.

■ In paragraph 13 of United's complaint, there is alleged a scheme to defraud,[1] thus bringing that paragraph within Rule 9(b). Rule 9(b) reads as follows:

> "(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

Citing this Rule, the Rudy Group argues that United's complaint also lacks the particularity required of a fraud allegation. However, it must be realized that Rule 9(b) is to be read in conjunction with the liberal rules of pleading verbalized in Conley v. Gibson, supra. Barron & Holtzoff (Wright ed.) Vol. 1A, § 302, pages 223–224.

■ "The traditional elements of fraud have been declared to be: (1) A false representation of a material fact; (2) knowledge of its falsity by the person making it; (3) ignorance of its falsity by the person to whom it is made; (4) the intent that it should be acted upon; (5) that it was acted upon by plaintiff to his damage." Barron & Holtzoff (Wright ed.) Vol. 1A, § 302, page 216. Now, examining United's complaint and in particular paragraph 13, it is apparent that averments are made which cover these traditional elements. There is alleged: (1) false representations (paragraphs 13, 14, (2) knowledge by the defendants of the falsity (paragraph 13), (3) ignorance of the truth by United (paragraph 13), (4) intent by defendants that United act on the representations (paragraphs 6, 9, 13), and (5) action by United in reliance on the representations to its damage (paragraphs 10 and 14). "Moreover, it should be pointed out that the requirement of Rule 9(b) that fraud be pleaded with particularity does not mean that a textbook pleading of all of the elements of fraud are required but requires that the complaint set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him." Union Mutual Life Insurance Company v. Simon, 22 F.R.D. 186 (E.D.Pa.1958). Thus, it is clear that United's complaint is within the requirements of Rule 9(b). See also: Consumers Time Credit, Inc. v. Remark Corp., 227 F.Supp. 263 (E.D.Pa.1964).

---

1. Although the complaint does not speak of "fraud", United admitted on oral argument that this was the substance of the claim.

## II. THE MOTION TO DISMISS OF HAEBERLE

Defendant, Haeberle, moves the Court to dismiss the United complaint on the grounds that it fails to state a claim against him. He makes three arguments. First and principally, he urges that there is alleged no relationship between United and himself which gives rise to any rights or liabilities. Secondly, he argues that regardless of relationships, the alleged defects (paragraph 12) were so obvious that reliance by United on contrary representations was not justifiable. Finally, Haeberle asserts briefly that the complaint fails to show any damages to United. The Court, however, must deny the motion.

Again, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99 (1957) sets the standard by which the complaint is to be tested. *Conley* holds as follows:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Applying this rule, the Court finds that United's complaint clearly establishes a foundation for proof of an enforceable claim against Haeberle.

Haeberle's first argument, that there is alleged no relationship between United and himself which gives rise to any rights or liabilities, is based on the claimed failure of the complaint to aver (1) an employment relationship, or (2) any other relationship which gives rise to a duty of disclosure. While it is true that United does not seek to establish an employment relationship with Haeberle, it is equally clear that a duty of disclosure, as argued by Haeberle, is not necessary for liability.

Haeberle relies on Steinbrugge v. Haddock, 281 F.2d 871 (10 Cir. 1960) which held that an experienced investor could not rely on the superior knowledge of a professional geologist, whom he knew to be associated with an adverse party, and thereby create in the geologist a fiduciary's duty of disclosure. However, in the instant case, fraud is alleged instead of the breach of a fiduciary duty. Moreover, on the question of fraud Steinbrugge held:

"These findings, supported by the evidence, led the trial court to deny the claimed fiducial relationship between Steinbrugge [investor] and Kunsman [geologist], and to place upon Steinbrugge the heavy burden of proving fraud, which he clearly did not sustain."

In Seaboard Surety Co. v. Permacrete Construction Corp., 221 F.2d 366 (3 Cir. 1955), relied on by United to support its fraud allegation, an insurance broker for a building contractor represented to a surety company that deposits in the contractor's bank account were unencumbered when, in fact, they were not. Judge Goodrich, writing for the Court, found that the broker was not a party to a fraudulent contract involving the deposit; nevertheless, he held the broker liable for the misrepresentations and approved the following two parts of a jury charge by Judge Kirkpatrick:

(1) " * * * the things the plaintiff who is seeking to recover in an action of this kind has to prove are that a representation was made to it of some fact; that it was a material representation; that it was false; that it was made by the defendants with the knowledge that it was false and with the intent that the plaintiff should act upon it; that the plaintiff did not know the fact, but relied on whatever information was given it; that it had a right to rely on it and that in so doing plaintiff was injured as a result of its reliance."

(2) " * * * if Smith knew of the plan to get the bond by representing what was really an advance payment on the contract as capital and, with

the knowledge that that representation was false, participated in this plan by forwarding that information without disclosing its falsity to the surety company and [sic] he could be held liable if the company relied on that information and suffered damages as a result of its reliance."

The broker was not at any time characterized in this case as a fiduciary.

Thus, it is clear that finding the existence of a fiduciary duty of disclosure is not necessary to the proof of actionable fraud. As is apparent from Judge Kirkpatrick's charge, the important question in the instant case is whether United was justified in relying on Haeberle, and both *Seaboard* and *Steinbrugge* recognize that professional status alone is a basis on which justified reliance *on a person* may be grounded. Therefore, since Haeberle has been averred to be a professional engineer and real estate appraiser, the Court finds the United complaint sufficient to support proof of a redressable claim. See also: Restatement, Torts, § 543.

In addition, Haeberle argues that reliance on him is not justifiable because United knew he was employed by the Rudy Group. However, United, in paragraph 8, only avers that Haeberle "on behalf and at the request of the other defendants herein", and this certainly is not solely construable as an allegation of employment. It will easily support proof of the opposite and is, therefore, not susceptible to attack. See also: Restatement, Torts, § 542.

Nevertheless, in finding justified reliance the status of the maker of the fraudulent misrepresentation is not the sole test. The representation itself must also justify reliance upon it. As a result, Haeberle urges in his second argument that the averred defects in the apartment house were so obvious that United should have discovered them. However, whether the defects were obvious or not is a question of fact which the Court must hold for the trier of fact. Certainly, this Court will not attempt to conclude from bare allegations the nature of the alleged defects.

Haeberle's final argument, that United has not suffered any damages, is two-pronged. First, he argues that under Rule 9(g), requiring items of special damages to be specifically stated, the United complaint must be dismissed for lumping damages. Assuming, but not deciding, that United is alleging special damages, an examination of United's paragraph 14 reveals that United, although averring a lump sum amount, has been specific in alleging the kind of damages it seeks. "Rule 9(g) does not require that the amount of special damages be pleaded, but only that the kind of special damages be specified." Moore's Federal Practice, Vol. 2A, § 9.08, page 1924. See in addition: Great American Indemnity Company v. Brown, 307 F.2d 306 (5 Cir. 1962). Thus, it is cleary apparent that paragraph 14 is sufficient.

Secondly, Haeberle asserts that since United alleges only a $150,000 loss, there is no damage because subtracting this $150,000 from $1,175,000, Haeberle's appraised value of the apartment house, leaves an excess of equity over the loan of $710,000. However, without discussing this novel argument, the Court finds the question of actual damages to be one of fact.

### ORDER

And now, to wit, this 17th day of July, 1967, for the reasons set forth above, the Motions of defendants, B. W. Rudy, Inc., Bertram W. Rudy, and Chestnut Avenue Apartments, Inc., for More Particular Statement of Claim and/or for Dismissal, be and they are hereby denied.

The Motion of defendant, Harry L. Haeberle, to dismiss is also denied.