**In re Ram Pratap SINGH, aka Ram P. Singh, Ram Singh, & R. P. Singh, Debtor.**

**The HUNTINGTON NATIONAL BANK, formerly known as the Huntington Portage National Bank of Kent, Plaintiff,**

**v.**

**Ram Pratap SINGH, aka Ram P. Singh, Ram Singh, & R. P. Singh, Defendant.**

**Bankruptcy No. 581–217.
Adv. No. 581–0431.**

United States Bankruptcy Court,
N. D. Ohio.

Jan. 15, 1982.

Barbara Heinzerling, Akron, Ohio, for defendant.

David E. Williams, Kent, Ohio, for plaintiff.

H. F. WHITE, Bankruptcy Judge.

The Plaintiff, The Huntington National Bank, formerly known as The Huntington Portage National Bank of Kent, hereinafter referred to as the Bank, filed a complaint claiming that the Debtor obtained the sum of $11,127.75 between January 1, 1977 and February 12, 1981 by fraudulent and deceptive representations, both oral and written, regarding the operations of an import business and sale of merchandise in various malls in Ohio.

The Debtor filed an answer to the Complaint and trial was held on August 4 and 5, 1981. From the evidence and testimony, the Court makes the following Finding of Facts.

## FINDING OF FACTS

1. The debtor filed a voluntary petition under Chapter 7 of Title 11 of the U.S. Code on February 12, 1981.

2. The Bank was scheduled as a creditor in the amount of $11,183.99 with security in inventory of Rama's Gifts valued at $633.00.

3. The last date for filing a Complaint for the Determination of Dischargeability of a debt was May 17, 1981 and a discharge of the debtor was granted on May 27, 1981. The Complaint of the Plaintiff was filed by the Bank on May 15, 1981.

4. The Debtor is a native of India and is a full-time teacher employed by the Board of Education of Cuyahoga Falls, Ohio.

5. The Debtor's educational background is a Master's in History from a University in India; Kent State University, College of Education, Master's Program; and certifi-

cation to teach in the Public School System of Ohio.

6. The Debtor has a daughter, Rama Singh, who also filed bankruptcy, and a son, Siri Singh. These children lived with the Debtor at 2581 Northampton Road, Cuyahoga Falls, Ohio.

7. On November 4, 1978, the Bank completed an application for a loan (Plaintiff's Exhibit B) and an Individual Financial Statement (Plaintiff's Exhibit A). Mr. Adolph, loan official of the Bank, completed Plaintiff's Exhibit B from information furnished by the Debtor. The Debtor signed the Statement. Mr. Adolph had been a loan officer for the Bank for approximately 40 years. The loan of $5,220 was payable in 60 days and was extended to the debtor. The money was used to purchase inventory for the operation of three stalls by the family of Ram Pratap Singh in malls in the Akron area. (Plaintiff's Exhibit B). The real estate on Northampton Road was jointly owned by the Debtor and his daughter Rama Singh (Plaintiff's Exhibit A).

8. A loan application dated January 26, 1979 for a loan, bearing Acct. No. 3815, in the amount of $6,030.00, payable in 120 days, was filled out by K. L. Adolph, as loan officer, and Debtor, as applicant. In said application, the answer given to "other monthly income" was "Varies" and the answer given to "From what source" was "Business". The purpose of the loan was renewal of Note No. 3535 in the amount of $5,220.00 (described in Finding No. 7) and of Note No. 1635 in the amount of $810.00. Note No. 1635 evidences a loan made to Debtor on March 24, 1977 to enable him to pay his income tax for the preceding year (Plaintiff's Exhibit C). This loan was a personal loan, not a commercial loan as requested in Plaintiff's Exhibit B. This loan was approved by Mr. Adolph.

9. A loan application dated April 14, 1979 for a loan, bearing account Number 3750, in amount of $2,510.00, payable in 90 days was filled out. Again, it is stated that other monthly income from business varies. The purpose of the loan was renewal of Note No. 3614. Note 3614 evidences a loan made to Rama Singh, Debtor's daughter, on December 1, 1978. This loan (Plaintiff's Exhibit D) is a personal loan, not a commercial account.

10. Loan application dated 6/26/79 for a loan, bearing Account No. 3815, in the amount of $6,030.00, payable in 90 days, was filled out by B. Hines, as loan officer of the Bank. The purpose was for the second renewal of Note No. 3535, plus interest charges. Note No. 3535 evidences a loan made to Debtor on November 4, 1978 (Plaintiff's Exhibit E). The applicant indicated this was a commercial loan and the Bank considered the Individual Financial Statement of November 7, 1978 (Plaintiff's Exhibit A).

11. The loan officer, B. Hines, was also aware of the business of Ram's Gifts. (Plaintiff's Exhibit E).

12. Loan application dated August 3, 1979 for a loan, bearing Account No. 4579, in the amount of $8,500.00, payable in 90 days, filled out by Adolph, was for the purpose of renewing Note No. 3815 and Note No. 3750. Note No. 3815 evidences a loan made to Debtor discussed in Finding No. 8 and Note No. 3750 evidences a loan made to Debtor discussed in Finding No. 9. This was also a commercial loan. The note was to be combined into a new $20,000 loan secured by a second mortgage on the house owned by the debtor and Rama Singh. Mr. Adolph approved this loan.

13. A loan application in the amount of $19,000 filled out by Mr. Adolph, but never signed by Debtor, was rejected by the loan committee. The purpose of the proposed loan was to combine Note No. 4579 (described in Finding No. 12) and add $10,000 to pay for merchandise for Christmas. (Plaintiff's Exhibit G). The Bank was further aware that General Electric Credit Corporation was owed $15,000.00 by the debtor and that the Debtor had co-signed with his son with Akron banks for about $10,000.00.

14. Loan application dated November 10, 1979 for a loan, bearing Account No. 4812, in the amount of $11,020.00, payable in 51 days, filled out by Ram Pratap Singh,

was for the purpose of renewal of Note No. 3614 (Plaintiff's Exhibit H) and evidences a loan made to Rama Singh, Debtor's daughter, on December 1, 1978. The Bank knew at that time that there was only one location of the business which was at Chapel Hill Mall.

15. A Financial Statement showing total assets of $125,000.00 and total liabilities of $79,670.00 was signed by the Debtor and submitted to Creditor for further extension of credit on January 16, 1980. In his schedule of Assets, Debtor lists real estate valued at $95,000.00, a 1976 Caprice auto valued at $2,500.00, household furniture valued at $7,500.00, and other assets valued at $20,000.00. Debtor's "other assets" were itemized as follows: "Carpets, Inlaid Tables, Lamps, Festival Elephants, Super Fine Vases, Silk Shades, Dresses, etc." (Plaintiff's Exhibit J). The annual income amounted to $21,375.00 and annual expenses amounted to $20,193.00, with no allowance for living expenses.

16. A note and security agreement granting the Bank a security interest in inventory listed on the schedule attached to security agreement to secure the payment of $11,020.00 was signed by Debtor and his daughter Rama Singh. Creditor thereafter filed financing statements covering said inventory (Plaintiff's Exhibits I and K).

17. A loan consolidation was discussed by Creditor and Debtor in the latter part of June and early part of July 1980. In preparation for the proposed restructuring of the debt, Debtor and his daughter, Rama Singh, signed a promissory note form which was blank as to the amount. Debtor individually signed a security agreement granting Creditor a security interest in all goods, inventory, accounts receivable and fixtures now owned or hereafter acquired and in a 1976 Chevrolet Caprice. Debtor also signed a financing statement covering all the collateral listed in the security agreement (Plaintiff's Exhibit N).

18. Debtor, pursuant to Creditor's requirement in negotiating the consolidation of loans, supplied Creditor with a partial list of inventory on June 4, 1980 (Plaintiff's Exhibit M) and an updated complete list of inventory on July 2, 1980 (Plaintiff's Exhibit O).

19. Mr. Adolph and Mr. Singh visited each other's houses on several Christmas holidays and on at least one occasion Mr. Adolph and his wife visited the Singhs for a dinner party. Mr. Adolph also saw the merchandise on several occasions and was aware of the type of operation that the family was conducting. He was also aware that Rama Singh was single and was living with her father and as an unmarried daughter, by Indian custom, her father handled all her business affairs. Further, Miss Singh had not graduated from high school in India and had not attended school in the United States and her use of the English language is limited. Her father also advised her and attended to all her business matters and was also with her when she conducted any business at the Bank. Mr. Adolph further admitted that Mr. Singh never referred to the business "as my business".

20. There was no evidence offered by the Bank that the money borrowed was not used for the purchase of merchandise as set forth in the loan application and financing statement. Further, there were no misrepresentations in the Financing Statement as to the liabilities.

21. Mr. Singh, in discussing the sale of Indian merchandise, admitted at all times that the family was having business troubles and that merchandise was not selling as anticipated and they were hopeful of procuring better merchandise. During this period several trips were made to India by the Debtor and his daughter for the purpose of procuring new merchandise.

22. Sometime in 1980 on a trip to India, Rama Singh was married and upon returning to the United States left the residence of her father.

## ISSUE

The issue is whether the Bank has sustained the burden of proving that the debtor's conduct is fraudulent within the

meaning of 11 U.S.C. § 523(a)(2)(A) so as to render the debt and the extension of credit to the Debtor from the Bank a nondischargeable debt.

## LAW

The Bank claims that it was defrauded by the Debtor's representations that money obtained from the Bank was for the debtor's import business and that the payments for said loans would be from the debtor's various business locations as set forth in the applications.

The Bank further alleges that the Debtor gave them financial statements and inventory lists that were to be used for the renewal or extension of credit and orally misrepresented the status of the business operations to the Bank officials. The Bank brings this action to except the discharge of the debt under Section 523(a)(2)(A) and (B) of title 11 of the Bankruptcy Reform Code of 1978.

The Creditor must prove false pretenses, false representation, or actual fraud under Section 523(a)(2)(A). Therefore, the exclusion from paragraph (A) of the statement in writing makes it clear that false financial statements are exceptions from 523(a)(2)(A).

■ There is no question from the evidence that the Debtor did obtain money and that there was a renewal, or extension, and refinancing of the credit. However, the burden is upon the Bank to show that an affirmative representation was knowingly and fraudulently made by the debtor and that this representation was relied upon by the other party. The representation need not necessarily be in writing, but can be orally made by the Debtor. See: 3 Collier on Bankruptcy, 15th Ed., Section 523.08 at 523–41.

It appears to this Court, considering all the evidence, that the Debtor did inform the Bank of the purpose of the loan and that there was no dispute that the money was used for the purpose of obtaining material for resale in the local shopping malls during the holiday season.

There was no proof by the Creditor that the debtor failed to list all his liabilities; in fact, from the evidence it was clear that the additional request for an extension of credit and increase in the amount due was due to the failure of the business to generate sufficient profitable sales in order to procure additional inventory. The statements made in the loan application should have alerted an experienced loan officer of the possible future business failure.

The evidence is clear that the debtor did attempt to negotiate with the J. C. Penney Company for a lease department in their stores and when this deal failed to materialize, the Bank was notified and the loan request was refused. Further, when it became evident to the Bank that the debtor was in financial difficulty, another loan officer was assigned to the account. Mr. Singh cooperated with the Bank and when requested gave them a security interest in all his personal property and a mortgage on his house. Certainly the Bank at that time was aware, or should have been aware, of the financial difficulty and business transactions of the Singh family. Mr. Singh was always present with his daughter when she obtained credit and he included her past due obligations in his loan renewal to the Bank.

■ The burden is upon the creditor to show that there was fraud involved and that Debtor intended to deceive the Bank. The Court in *In re Byrd*, 9 B.R. 357 (1981) stated: "It is well established that there must be proof of positive fraud to fall within the meaning of false pretense or representation. This involves a showing that the acts which constitute the fraud involve moral turpitude or an intentional wrong." *In the Matter of Grubbs*, 9 B.R. 499 (1981); *In the Matter of Brashears*, 12 B.R. 136 (1981). This the Bank has failed to do. Certainly the loan officer, Mr. Adolph, from his own testimony knew the close family relationship and he further knew that the daughter was not capable of handling any business transactions on her own because of her lack of education and use of the English language. Further, under Indian customs,

until the daughter is married, she is under the supervision of her father and this would be considerably more so as she is in a strange land and due to her lack of ability to use the English language, she was unable to communicate.

It is evident that the loan officer, other than for the purposes of extending the credit for his financial institution, wanted to help the family to establish their business of selling Indian costume jewelry.

The Plaintiff does have a heavy burden in objecting to the discharge of a debt under 11 U.S.C. § 523(a)(2)(A). In this case based upon the evidence presented to the Court, it is the conclusion of this Court that the creditor has failed to substantiate the burden of proof necessary to deny the discharge.

As to the financial statement, the Court comes to the same conclusion that there was no evidence that the Debtor intended to deceive the Bank. There is no evidence that the financial statements were false and from the testimony of the loan officer of the Bank, it is evident that the Bank was aware of the financial condition of said Debtor. This is especially so when Plaintiff's Exhibit J discloses that the Debtor had an annual income of $21,375.00 and expenses of $21,193.00 and there was no allowance for living expenses. That document alone should have alerted a prudent loan officer of the precarious position of the Debtor.

Therefore, the objection to the discharge as set forth under Section 523(a)(2)(B) is also denied and the discharge should be granted to the debtor.

This Court finds that the debtor did not commit fraud, nor did he give a false financial statement to the Bank for the extension of credit. The Debtor admitted that the purpose of the loan was for the business and the Bank knew that the money was used for the purpose of operating the small business located in various locations. Accordingly, the dischargeability complaint does not come within the provisions of 523(d) as there is no consumer debt in-

volved. Therefore, the Debtor is not entitled to costs or attorney fees in this proceeding for determination of dischargeability.