In re Dixon Lee LOWTHER, d/b/a
Lowther Financial
Services, Debtor.

Modesto ROBLES and Amelia
Robles, Plaintiffs,

v.

Dixon Lee LOWTHER, Defendant.

Bankruptcy No. Bk–81–00636.
Adv. No. 81–0241.

United States Bankruptcy Court,
W.D. Oklahoma.

Aug. 31, 1983.

---

Richard M. Healy, Oklahoma City, Okl., for plaintiffs.

James A. Loomer, Oklahoma City, Okl., for debtor.

## DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

This matter came on for hearing following the complaint of Modesto and Amelia Robles to have a debt of $100,000 excepted from discharge. For their complaint the plaintiffs allege a cause of action under both 11 U.S.C. §§ 523(a)(2)(A) and (4) based upon false representations and defalcation while in a fiduciary capacity respectively.

In addition, plaintiff's claim relies on a finding of an agency relationship between the debtor and a third party.

The debtor filed his voluntary petition under Chapter 11 on April 3, 1981, and schedules reflect he was engaged in the business of factoring accounts receivable.[1] It is uncontroverted that the plaintiffs did not know of the debtor at the time of the alleged misrepresentations and did not meet him until several months later.

In fact, the plaintiffs do not allege that the representations were made by the debtor, but that his alleged agent made the same on the debtor's behalf. The alleged agent, Mr. William Probst, though listed as a witness for both parties in this action did not testify or appear at trial.

The record reflects that Mr. Probst was introduced to the plaintiffs by their son, Robert Robles,[2] in August, 1980. It was also the Robles' son who arranged the meeting between his parents and Mr. Probst which led to this dispute. Mr. Probst flew in his private plane along with the pilot and Robert to visit the Robles family. While at the Robles home Mr. Probst provided Modesto and Amelia financial advice with regard to investing monies which they then had on deposit. He also discussed insurance and tax matters with the couple. It was following this discussion that the Robles wrote a check in the amount of $100,000 to the order of "Lowther & Co." as an investment in the Lowther factoring business.

Mr. Probst was in the business of financial planning and had several accounts whom he'd counsel regarding investments and estate planning. The legal aspects of Mr. Probst's operation was evidently han-

---

1. This operation included a process where the debtor would buy invoices from various companies. In turn a check would be sent to the debtor from the company when that invoice would be paid by the customer. The debtor's profit would be made by discounting the face amount of the invoices paid by him to the company. The difference between the discounted amount paid by the debtor and the actual amount of the invoice payable by the company customer would be the debtor's margin of profit.

2. Robert is referred to as the "agent" of the Robles family with regard to this transaction. His name appears on all the relevant documents, including the initial contract, the agreements and interest checks from the investment. At the time of the transaction he was still a student in law school, but subsequently graduated before the dispute was consummated. The debtor has continually asserted that Robert is the real party in interest, but the Court does not reach this question.

dled by Mr. Joel Hersh. Mr. Hersh officed in a facility leased by Mr. Probst. Mr. Hersh and the younger Robles were friends in law school and were associated with each other in their law practice. The record discloses an arrangement between Probst's financial planning business and Hersh's law practice. Evidently many of the same clients which Probst provided financial planning advice received legal advice from Hersh. In this regard, Robert Robles in connection with Hersh's law practice prepared most of the trust agreements for Probst's clients. Also some work was done directly for Probst by Robert.

Because of this arrangement Robert came to know Probst quite well and on occasion received personal loans from him. Robert also was made aware that several of Probst's clients had made investments in Lowther Financial Services prior to arranging the meeting between Probst and the Robles family. Moreover, Probst made available to Robert and Hersh his personal airplane for both business and pleasure, provided secretarial services and free telephone use.

Following the $100,000 investment in Lowther Financial Services, Robert made several demands upon the debtor for return of the funds and complete withdrawal of the investment. These demands were met by two separate agreements made between Lowther Financial Services and Robert Robles.[3] The agreements were made on August 22, 1980 and January 1, 1981, and had the effect of allowing Lowther Financial Services to pay Robert increments of $1,000 per month rather than effectuate the total withdrawal of funds. However, additional demands for the funds were made until the debtor filed his petition in bankruptcy.

■ Section 523 of the Bankruptcy Code allows certain exceptions to discharge and among these are instances where the debtor obtains money by false representations or actual fraud and for defalcation while acting in a fiduciary capacity. 11 U.S.C.

§§ 523(a)(2)(A) and (a)(4). It is clear however that exceptions to dischargeability of debts are strictly construed against the creditor and in favor of the debtor. *See In re Danns,* 558 F.2d 114 (2d Cir.1977); *In re Taylor,* 514 F.2d 1370 (9th Cir.1975); *In re Huff,* 1 B.R. 354 (Bkrtcy.N.D.Utah 1979). Moreover, courts have uniformly placed the burden of proof squarely upon the opposing creditor. *See e.g., In re Singn,* 16 B.R. 449 (Bkrtcy.N.D.Ohio 1982); *In re Wise,* 6 B.R. 867 (Bkrtcy.M.D.Fla.1980); *In re Schlickmann,* 6 B.R. 281 (Bkrtcy.D.Mass.1980). Furthermore, the standard of proof that is imposed on the challenging creditor is that of clear and convincing. *In re Neumann,* 13 B.R. 128 (Bkrtcy.E.D.Wis.1981); *In re Magnusson,* 14 B.R. 662 (Bkrtcy.N.D.N.Y.1981); *In re Huff, supra.*

■ In order to prove a case under § 523 the plaintiff must show that (1) the debtor made the materially false representation; (2) that such representation was made knowingly and with the intent to defraud; (3) and that the plaintiff reasonably relied on the false representation. *In re Slutzky,* 22 B.R. 270 (Bkrtcy.E.D.Mich.1982); *In re Gillespie,* 11 B.R. 167 (Bkrtcy.D.Or.1981). But before this Court reaches the question of dischargeability under § 523(a)(2)(A) we must decide whether Mr. Probst may be considered an agent of the debtor. If Probst was not an agent then no cause of action arises for the false representations must be made by the debtor or an agent of the debtor. 11 U.S.C. 523(a)(2)(A).

■ Under certain circumstances a debtor in bankruptcy who has not made the false representations may, nevertheless, be bound by the fraud of an agent acting within the scope of his authority. *In re Brown,* 412 F.Supp. 1066 (D.W.D.Okl.1975); *Matter of Newmark,* 20 B.R. 842 (Bkrtcy.E.D.N.Y.1982). Any authority of the agent is based upon the words or acts of the principal, and not of the agent. *Cox v. Pabst Brewing Co.,* 128 F.2d 468 (10th Cir.1942);

---

**3.** Robert Robles' name appears on each of these agreements rather than his parents. None of the documents entered into evidence reflect the name Modesto Robles or Amelia Robles. Additionally, none of the documents refer to Robert as agent for his parents.

*Anglo-Am. Clothing v. Marjorie's of Tiburon,* 571 P.2d 427 (Okl.1977). Also, it is a universally accepted rule that a "principal is liable for the frauds and misrepresentations of his agent within the scope of his authority or employment even though he had no knowledge of such representations." *Amen v. Black,* 234 F.2d 12, 20 (10th Cir.1956).

■ The existence of an agency relationship does not occur unless conduct of the parties manifests that one of them is willing for the other to act for him subject to his control and that the other consents to so act. *Steinbrugge v. Haddock,* 281 F.2d 871 (10th Cir.1960). The existence of an agency relationship must be proved by the person asserting it. *Id.* at 872.

■ The plaintiffs ask the Court to find that Probst was the agent of the debtor since they allege that Probst stated he was agent for Lowther Financial Services. They present no other proof of agency and indeed we find no such evidence from the record. Mr. Probst was not called as a witness to substantiate any of the plaintiffs' claims. Quite the contrary we feel the record demonstrates that Probst was not the agent of this debtor. No evidence was presented which purported to show that the debtor or Mr. Probst agreed to any agency relationship. Mr. Probst operated his own financial planning business and independently advised clients, including the plaintiffs, as to various investment possibilities. The debtor exercised no control over the accounts of Probst. Lowther Financial Services was but one of several investment items which Probst offered his clients incident to his professional services. In fact the record reflects that Probst serviced the Robles by providing not only the opportunity to invest money in the debtor's business but in an insurance policy and other business transactions. We feel that Probst was acting in his own behalf and for his own financial benefit when he advised the Robles as to Lowther Financial Services.[4] The mere allegation, without more, that Probst represented himself as the agent of the debtor is insufficient to except the debtor from discharge under § 523(a).

■ Even assuming *arguendo* that Probst was the agent for Lowther we feel that the complaint still must fail. As previously noted one of the essential elements of proof to except one from discharge under § 523(a)(2)(A) is that the plaintiff reasonably relied on the false representation. *In re Slutzky, supra.* A review of the facts in this matter raises serious questions of reliance as well as whether such reliance may be viewed as reasonable.

Mr. and Mrs. Robles' reliance was placed almost exclusively upon their son, Robert, and not upon the debtor or Mr. Probst. But for their son's undertakings the plaintiffs would never have made the $100,000 investment. They totally relied on their son's suggestion that Mr. Probst was a credible person and without any investigation whatsoever handed over to him a check for $100,000. It appears from the record that regardless of what Mr. Probst might have stated regarding Lowther Financial Services the couple, at Robert's urging, stood ready to make the investment. In other words, under the circumstances Robert's advice was totally controlling over the acts of his parents with regard to the investment.

Furthermore, we do not think that any reliance upon statements which may have been made by Probst could be deemed reasonable. Their son, trained in the legal profession, was present throughout the negotiations between his parents and Probst. Robert and Probst were intimately acquainted, both personally and professionally, with each other. The plaintiffs had ample opportunity, had they chosen to do so, to investigate Lowther Financial Services as well as Mr. Probst. Prior to making a $100,000 investment in a company which one was not familiar it is only reasonable to suppose that some inquiry would be made. Unfortunately, however, not one step was taken by these plaintiffs to ascertain the financial or professional status of the com-

---

4. This conclusion is supported by the fact that the Robles sued Mr. Probst in state court and received judgment in the amount of $100,000 based upon this same transaction.

pany nor verify any alleged representations on the debtor's behalf. Their conduct in light of all the surrounding circumstances was totally improvident. Thus, we are compelled to find that any reliance on the part of the Robles would be unreasonable.

The plaintiffs also allege that the debt should be excepted from discharge since the debtor committed defalcation while acting in a fiduciary capacity. This section deals with an express or technical trust and not one simply arising out of contract. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Romero,* 535 F.2d 618 (10th Cir.1976); *In re Paley,* 8 B.R. 466 (Bkrtcy.E. D.N.Y.1981). The fact that an instrument may be labeled "trust" or contain such a term does not make it a trust for purposes of this section. *Davis v. Aetna Acceptance Co., supra; In re Paley, supra.*

In the instant case the debtor established the "Lowther Trust Account" where investment funds were deposited. However, this was nothing more than a regular checking account upon which checks were drawn in which to purchase the invoices used in the factoring business. The plaintiffs' money was so deposited and used to purchase such invoices. Individuals who invested in Lowther Financial Services were generally referred to as "lenders" and the record connotes a debtor-creditor relationship insofar as these investments which were based on a written contract between the lender and the debtor. Under these circumstances there was not a trust created sufficient to comply with the provisions of § 523(a)(4). *See Watts v. Petrick,* No. 82–995–W (D.W.D.Okl. April 1, 1983). Having not found a trust there is no need to reach the question of defalcation.

For all of the above reasons we hold that the plaintiffs have failed to prove the existence of an agency relationship between Mr. Probst and the debtor sufficient to impute alleged misrepresentations which would except the debt from discharge. In addition, there does not exist a technical or express trust to come within the meaning of defal-cation while acting in a fiduciary capacity that would deny the discharge of this debt.

Accordingly,, the $100,000 debt may be discharged in bankruptcy and the plaintiffs' complaint shall be and hereby, is dismissed.

Pursuant to B.R. 7052 this Decision constitutes the findings of fact and conclusions of law.

An appropriate judgment will be entered.