**In re Jodie NEVILS, Jr., Debtor.**

**MODERN FINANCE CO., a corporation, Plaintiff,**

**v.**

**Jodie NEVILS, Jr., Defendant.**

**Bankruptcy No. 82–02901(2).**
**Adv. No. 83–0101(2).**

United States Bankruptcy Court, E.D. Missouri, E.D.

Oct. 1, 1984.

Robert A. Cox, St. Louis, Mo., for debtor/defendant.

Jack B. Schiff, Clayton, Mo., for plaintiff.

Curtis L. Mann, St. Louis, Mo., Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Plaintiff requests a determination that certain indebtedness totaling $465.20 and owed it by Defendant is non-dischargeable under 11 U.S.C. § 523(a)(2). Plaintiff, in general, alleges that Debtor falsely and fraudulently represented that he owned a certain 1977 Oldsmobile 98 Regency automobile in order to induce Plaintiff to lend him approximately $630.00.

FACTS

These are the rather bizarre background facts of this case:

1. On December 19, 1980, Jodie Nevils, Sr., the father of the Defendant, agreed to buy from Economy Motor Co. (Economy) of St. Louis, Missouri, a 1977 Oldsmobile 98 Regency automobile. The purchase price was $4,290.00. Mr. Nevils, Sr. paid $1,200.05 of his funds toward this amount. He was then escorted by an employee of Economy to the offices of Finance America in Alton, Illinois. There, on the spot, he obtained a loan in the net amount of $2,571.95, signed a promissory note and security agreement covering the automobile, and also executed a Missouri application for title form showing Finance America as a first lienholder.

2. Thereafter, employees of Economy told Mr. Nevils, Sr. to return later to pick up his automobile after it had been cleaned.

3. When the automobile was ready, Mr. Nevils, Sr., feeling ill, sent his son and the Defendant herein, Jodie Nevils, Jr., (Jodie, Jr.) to pick it up. According to Jodie, Jr., he and his father had agreed that Jodie, Jr. would help pay for the automobile and would be allowed to drive it. When Jodie, Jr. arrived at Economy, instead of delivering the automobile to Jodie, Jr., some employee of Economy directed Jodie, Jr. to go to the offices of the Plaintiff, Modern Finance, to "sign some papers". Whether Jodie, Jr. went alone or was accompanied by some employee of Economy to Plaintiff's office is disputed by the witnesses. However, once there, Jodie, Jr., on the spot, obtained a loan from Plaintiff in the net amount of $600.70. He signed a promissory note and security agreement covering the automobile. The reverse side of the security agreement contains the following recital:

Debtors warrant they are the owners of the collateral free and clear of liens, encumbrances, and security interests.

Jodie, Jr., a high school drop-out, stated that he thought he was signing papers to pick up the car and did not read the documents he signed. He also stated that no

one explained the documents to him. Finally, he testified that he never received any check or other form of disbursement from Plaintiff.

4. Robert Rapp, a vice president of Plaintiff, testified that he had handled the loan transaction with Jodie, Jr., and had explained all facets of the loan transaction to him. Mr. Rapp admitted that he had obtained all the information on the loan over the telephone, from an employee of Economy. He also admitted not having any conversations with Jodie, Jr. regarding his ownership of the automobile in question. He simply assumed that Jodie, Jr. was the owner of the car in question. Mr. Rapp went on to state that he gave Jodie, Jr. a check for $600.70 which he understood was signed over to Economy. He also stated at the time of this transaction he was unaware of the other lien on the car. It was not until July 26, 1982, after writing the Missouri Department of Revenue, that Mr. Rapp learned that Jodie Nevils, Sr., not Jodie, Jr., was the owner of the automobile on which Plaintiff had attempted to obtain a lien.

5. Jodie, Jr. made several payments on the loan to Modern Finance Co. and then defaulted. He filed his petition for relief under Chapter 7 of the Bankruptcy Code on December 30, 1982.

CONCLUSIONS

■ Plaintiff seeks to make its case under 11 U.S.C. 523(a)(2). That section provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

The Court need not address whether this case more properly comes under subsection (A) or (B) of the above subparagraph. Both require the Plaintiff, by clear and convincing evidence, to prove that the Defendant acted with fraudulent intent or an intent to deceive. *In re Lowther*, 32 B.R. 638 (Bkrtcy.Okl.1983).

■ Simply put, the Plaintiff has failed to meet its burden on this point.

The loan transaction between Jodie, Jr. and the Plaintiff was arranged and handled not by Jodie, Jr., but by whichever of Economy's employees arranged financing for its prospective buyers. Jodie, Jr.'s participation was limited to executing loan documents prepared by Plaintiff in advance of his arrival. What misrepresentation occurred was not made by Jodie, Jr., but was made by Economy's "credit arranger". True, Jodie, Jr. did nothing to apprise Plaintiff of its mistake, but because of his lack of formal education and the absence of any benefit to him, any inference of fraudulent intent that might otherwise arise from his silence, is negated.

In short, Plaintiff has not demonstrated any fraudulent conduct by Defendant and the indebtedness owed it by Defendant is dischargeable.

A separate order consistent with this opinion will be entered this date.