**In re Maria Madeleine TONDREAU, Debtor.**

**NOTRE DAME FEDERAL CREDIT UNION, Plaintiff,**

v.

**Maria Madeleine TONDREAU, Defendant.**

**Bankruptcy No. 86–31503.
Adv. P. No. 87–3023.**

United States Bankruptcy Court,
N.D. Indiana,
South Bend Division.

June 26, 1989.

John C. Firth, Thomas C. Sopko & Associates, South Bend, Ind., for plaintiff.

James D. Nafe, and Paul James Newman, South Bend, Ind., for defendant-debtor.

## ORDER

ROBERT K. RODIBAUGH, Senior Bankruptcy Judge.

On January 22, 1987, Notre Dame Federal Credit Union ("Credit Union") filed its Complaint to Determine Dischargeability of Debt against Marie Madeleine Tondreau, the debtor herein, alleging that credit card purchases totalling $1,027.17, made within 40 days of the filing of the debtor's petition under Chapter 7 of the Bankruptcy Code

should be excepted from her discharge under 11 U.S.C. § 523(a)(2)(C). The court held a trial on the Credit Union's complaint on April 21, 1988, and took the matter under advisement on April 22, 1988.

### Background

On April 27, 1985, the debtor completed an Application for Mastercard and Cardholder(s) Agreement requesting a Mastercard with a credit limit of $500.00. The Credit Union approved the debtor's application on May 17, 1985, and thereafter issued a Mastercard to the debtor. On July 8, 1986, the Credit Union issued a letter to the debtor informing her that her Mastercard account exceeded the assigned limit of $1,000.00 [1] by $166.83, and notifying her that the Credit Union would revoke her Mastercard privileges if she failed to bring the account within the assigned limit by July 18, 1986. On July 21, 1986, after the date set for revoking the debtor's credit card privileges, the Credit Union issued notice to the debtor informing her that the Credit Union had decided to terminate the debtor's credit card and asking her to return the Mastercard to the Credit Union. The notice listed the reasons for its action as "Mastercard Overlimit and Loan Delinquent." Denial, Termination or Change of Credit, Plaintiff's Exhibit 3 (July 21, 1986). The debtor testified at trial that she received both the July 8, 1986, letter and the termination notice from the Credit Union. She testified that upon receiving the notice from the Credit Union she understood that her Mastercard privileges were revoked.

Following the termination of her credit card privileges, the statements concerning the debtor's Mastercard account reflect the following activity:

**August 25, 1986 Statement**

| | |
|---|---|
| Payments | –0– |
| New Activity | 61.77 |
| Finance Charge | 16.71 |
| New Balance | 1,165.47 |

**September 23, 1986 Statement [2]**

| | |
|---|---|
| Payments | 270.00 |
| New Activity | –0– |
| Finance Charge | 14.86 |
| New Balance | 910.33 |

**October 23, 1986 Statement**

| | |
|---|---|
| Payments | –0– |
| New Activity | 404.07 |
| Finance Charge | 14.82 |
| New Balance | 1,329.22 |

**November 24, 1986 Statement**

| | |
|---|---|
| Payments | –0– |
| Credits | 375.54 |
| Adjustments | 10.00 |
| New Activity | 988.64 |
| New Balance | 1,952.32 |

At trial the debtor testified that the transactions recorded on the October 23, 1986, and November 24, 1986, statements were charge purchases for ordinary living expenses for herself, such as groceries, gasoline, cigarettes, household toiletries, car parts/repairs, shoes, prescriptions, eye glasses, and lumber for repairing the porch on her home. The debtor had no dependents at the time she made the credit card purchases although her boyfriend lived with her off and on during 1986 and therefore may have used some of the items purchased. The debtor stated that her boyfriend made some of the purchases himself using her credit card but indicated that he did so with her permission. The debtor explained that throughout 1986 she worked at St. Paul's Retirement Community and earned a salary of approximately $15,000.00 annually. The debtor further testified that her income was sufficient to cover her living expenses until September of 1986 when she contacted an attorney about the

1. Between May of 1985 and July of 1986, the Credit Union had raised the limit on the debtor's Mastercard account from $500.00 to $1,000.00.

2. The record is unclear as to whether the Credit Union reinstated the debtor's credit privileges in September, 1986. The debtor's payments totalling $270.00 during this billing period brought her account within the assigned limit of $1,000.00. The September 23, 1986, statement accordingly shows a balance of $910.33 and states that $89.00 worth of credit is available on the account. The parties offered no evidence of correspondence or communication with the debtor after the letter terminating the debtor's credit privileges on July 21, 1986, other than the monthly statements.

possibility of filing a petition in Bankruptcy Court. The debtor testified that her attorney informed her that once she filed for bankruptcy she should no longer use any of her credit cards. The debtor filed her petition on October 28, 1986.

### Discussion and Decision

■ The issue before the court is whether any portion of the debtor's obligation to the Credit Union on her Mastercard account may be excepted from the debtor's discharge under 11 U.S.C. § 523(a)(2). Section 523(a)(2) provides in relevant part:

> (a) A discharge ... does not discharge an individual debtor from any debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

> > .    .    .    .    .

> > (C) for purposes of subparagraph (A) of this paragraph, consumer debts owed to a single creditor and aggregating more than $500 for "luxury goods or services" incurred by an individual debtor on or within forty days before the order for relief under this title, ... are presumed to be nondischargeable; "luxury goods or services" do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor;....

11 U.S.C.A. § 523(a)(2)(A) and (C) (West Supp.1989). The exception to discharge provided by § 523(a)(2)(A) is construed liberally in favor of the debtor and strictly against the party asserting the exception. *Morales v. Tanner (In re Tanner)*, 31 B.R. 338, 339 (Bankr.S.D.Fla.1983). To have a debt declared nondischargeable in bankruptcy under § 523(a)(2)(A), the burden is on the plaintiff to prove each of five elements including:

1. That the debtor made the representations;

2. That at the time the representations were made he knew them to be false;

3. That the representations were made with the intention and purpose of deceiving the creditor;

4. That the creditor reasonably relied on the representations;

5. That the creditor sustained the alleged injury as a proximate result of the representations having been made.

*Rezac v. Maier (In re Maier)*, 38 B.R. 231, 233 (Bankr.D.Minn.1984); *see also Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809 (Bankr.E.D.N.Y.1983). The standard of review is that of clear and convincing evidence. *Robles v. Lowther (In re Lowther)*, 32 B.R. 638, 641 (Bankr.W.D.Okla.1983). If plaintiff, however, is able to show that the debtor's obligation falls within § 523(a)(2)(C), the debt is presumed to be nondischargeable.

■ Reviewing the debtor's testimony and the other evidence presented herein, the court finds that the Credit Union has met its burden of showing that the obligations incurred on her Mastercard from September 20, 1986, to October 27, 1986, should be excepted from the debtor's discharge. The court notes that the debtor made four small purchases on her Mastercard in July of 1986. Thereafter on August 27, 1986, and September 19, 1986, the debtor made two payments on her Mastercard account in the amounts of $170.00 and $100.00 which apparently brought the account current and within the designated credit line of $1,000.00. Then, beginning on September 20, 1986, the debtor made 38 separate purchases totalling $1,017.17 on her Mastercard within the 40–day period before the court entered the order for relief in her case.[3] Credit Union's Exhibit 6. The debtor made the purchases at a variety of businesses including Osco's, Baker's Shoes, Saveway Shoes, Super America, 9 West, South Bend Clinic, Joseph's Shoes,

---

**3.** The Credit Union's complaint apparently incorrectly states that the purchases totalled $1,027.17.

The Ridge Company, Auto Works, Seven Eleven, Hub Cap Annie, Rainbow Muffler, Williams Home Center and C & B Optical. These transactions, although individually quite small in amount (all under $50.00 but one) doubled the outstanding balance on the debtor's Mastercard account bringing it $952.32 over her $1,000.00 line of credit.

■ Considering the nature of the items purchased, the court concludes that most of them would not qualify as "luxury goods or services" under § 523(a)(2)(C).[4] Hence, the presumption of nondischargeability set forth in § 523(a)(2)(C) does not apply to most of the items purchased. This conclusion, though, does not end the court's inquiry in this case. The Credit Union still has the opportunity to prove that the debtor knowingly made false representations in order to obtain an extension of credit on her Mastercard account. The court believes that the Credit Union has met its burden with respect to this issue.

■ Courts have considered various factors in determining whether a debtor's use of a credit card amounts to a false representation which should be excepted from discharge under § 523(a)(2)(A). These factors include:

1. The length of time between the credit card charges and the filing of the petition in bankruptcy.

2. Whether the debtor consulted an attorney about bankruptcy before making the charges.

3. The number of charges made.

4. The amount of the charges.

5. Whether the debtor made several charges on the same day or at the same store below the amount at which the seller would seek approval of the charges.

6. Whether the charges represent an abrupt change in the debtor's use of the credit card.

7. Whether the charges exceeded the credit limit of the account.

8. The debtor's financial circumstances when the charges were made.

9. Whether the debtor was employed at the time.

10. Whether the debtor had reasonable prospects for employment or a reasonable expectation of additional income.

11. The debtor's financial sophistication.

12. Whether the items charged were superfluous.

*Montgomery Ward and Co., Inc. v. Blackburn (In re Blackburn)*, 68 B.R. 870, 880 (Bankr.N.D.Ind.1987) (citations omitted). Another important factor to consider is whether the debtor used the credit card after receiving notice that it had been revoked.

In this case the court finds that each time the debtor used her Mastercard after she had notice that the Credit Union had revoked her account privileges, she falsely represented that she was entitled to use the Mastercard. In order to facilitate her use of the Mastercard after the Credit Union suspended her credit card privileges and her balance was well above her line of credit, the debtor made purchases under $50.00 which were unlikely to be detected immediately by the Credit Union since most businesses are not required to get authorization for purchases under $50.00. Using this system the debtor generated a total new debt to the Credit Union of $1,017.17 in just over one month's time often making several charges on the same day at the same store in amounts below $50.00. In doing so, the court finds the debtor knowingly violated the terms of her Mastercard

---

**4.** The court believes that several of the items would qualify as luxury items when considered in the context of all the purchases made. For instance, although one pair of shoes normally is not considered to be a luxury good, the debtor herein purchased four pairs of dress shoes in five days. Furthermore, the evidence shows that the debtor purchased cigarettes, a lighter, candy and a greeting card on her Mastercard as well as various miscellaneous items. These items may well be considered to be "luxury goods" for one in the debtor's position. *See Montgomery Ward and Co., Inc. v. Blackburn (In re Blackburn)*, 68 B.R. 870, 874 (Bankr.N.D.Ind. 1987) ("Because what amounts to excessive comfort necessarily depends on the debtor's particular situation, luxury is inherently relative.").

account. Looking at the various factors which other courts have deemed relevant including, but not limited to, the striking contrast in the debtor's use of her Mastercard before September 20, 1986, and afterward, the number of charges made, the amount of the charges made, the debtor's circumstances at the time she made the charges, and the fact that the debtor made most of these purchases after she had consulted with her attorney concerning filing for bankruptcy, the court can only conclude that the debtor made these charges on her Mastercard account in an effort to deceive the Credit Union by making unauthorized purchases which she would not have to repay when she filed her bankruptcy petition.

The court believes the Credit Union has come forward with sufficient evidence to show that the debtor falsely represented the status of her Mastercard account to the various businesses where she made purchases on her Mastercard after her account had been closed. The court further finds that the various businesses which sold items to the debtor on her Mastercard reasonably relied on her false representations and that their reliance is sufficient to meet the requirements of § 523(a)(6) in this case. The Credit Union also has shown that it sustained injury as a direct result of the debtor's actions. The court accordingly finds that the debtor's obligation to the Credit Union in the amount of $1,017.17 is excepted from her discharge. The court further finds that the Credit Union shall be entitled to $500.00 for its attorney's fees and costs in pursuing this action.[5] *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975).

### Conclusion

WHEREFORE, the court grants the Credit Union's complaint and determines that the debtor's obligation in the amount of $1,017.17 is excepted from her discharge. In addition, the court grants the Credit Union's request for attorney's fees and costs against the debtor in the amount of $500.00. It is

SO ORDERED.

---

5. The record shows that while the attorney for the Credit Union spent 15 hours pursuing this action against the debtor which amounts to services in the amount of $1,125.00 when calculated at the rate of $75.00 per hour, the Credit Union asks for only $500.00 for attorney's fees. The court believes this request is quite reasonable.